OPINION
{¶ 1} Lauren K. Thomas appeals from his conviction and sentence on four counts of unlawful sexual conduct with a minor.
 {¶ 2} Thomas advances four assignments of error on appeal. First, he contends the trial court erred in overruling his motion to hire a psychologist at state expense. Second, he claims the trial court erred in designating him a sexual predator. Third, he asserts that the trial court erred in imposing a maximum sentence. Fourth, he argues that the trial court erred in ordering his sentence to be served consecutive to the sentence imposed in a prior case.
 {¶ 3} Based on the reasoning set forth below, we conclude that the trial court did not err in overruling Thomas' motion to hire a psychologist at state expense. We also find no error in the trial court's designation of Thomas as a sexual predator. We agree, however, that the trial court erred in imposing the statutory maximum sentence without making the requisite findings to support it. Finally, we conclude that the trial court erred in ordering Thomas' sentence to be served consecutive to the sentence he had received in a prior case. Although the trial court made the findings necessary to impose consecutive sentences, it failed to give reasons for those findings as required by Ohio law.
 {¶ 4} Given the trial court's failure to make the necessary findings to impose a maximum sentence and its failure to give reasons in support of its findings for consecutive sentences, we will affirm in part and reverse in part the judgment of the Greene County Common Pleas Court and remand the matter for resentencing.
 I. Factual and Procedural Background {¶ 5} A grand jury indicted Thomas on thirty-one counts of unlawful sexual conduct with a minor, three counts of rape, one count of kidnaping, and one count of corrupting another with drugs. All of the charges involved Thomas' conduct with the same victim, a fifteen-year-old female.
 {¶ 6} Thomas ultimately entered guilty pleas to four counts of unlawful sexual conduct with a minor in exchange for dismissal of all other charges. The trial court accepted the guilty pleas and later set the matter for sentencing and a sexualoffender classification hearing on June 10, 2004.
 {¶ 7} Prior to final disposition, the trial court filed an April 27, 2004, judgment entry ordering Thomas to be examined by Dr. Bobbie Hopes, a psychologist, for purposes of assisting the court in making an appropriate sexualoffender classification. The trial court noted that it was ordering the examination "[u]pon the request of the Greene County Adult Probation Department." Dr. Hopes subsequently examined Thomas on May 8, 2004, and drafted a May 25, 2004, report setting forth the results of her examination.
 {¶ 8} Thomas responded by seeking a continuance and filing a motion to hire Dr. Richard Bromberg, another psychologist, at state expense.[1]
In support, he asserted that he was indigent and that he required the assistance of Dr. Bromberg to evaluate Dr. Hopes' report. The trial court did not rule on the motion prior to the sexual-offender classification hearing. Thomas' counsel raised the issue at the outset of the hearing, however, arguing as follows:
 {¶ 9} "Without the assistance of an expert I believe my client is prejudiced due to the fact that some of [Dr. Hopes'] findings are based on certain psychological tests, including the MMPI and Static-99 tests. Without the opinion of the expert to evaluate those findings my client is unable to determine whether those findings are valid or not. That's why we moved the Court to be able to obtain an expert to do that.
 {¶ 10} "I would note for the record that the tests were not, or the report, rather, was not completed in this case until May 25, 2004, received in my office in the first week of June, and the motion was likewise filed the first week of June. We would, therefore, renew the motion for a continuance and a motion to hire an expert to assist us in the evaluation of this report."
 {¶ 11} The trial court rejected defense counsel's argument and orally overruled the motions, reasoning:
 {¶ 12} "The Court will find four months ago the Defendant pled guilty on February 12th, 2004, to this offense and was advised at that time that the sexual classification hearing would be held at the sentencing date. The sentencing previously was postponed, and on April 22, again a notice of sexual offender classification was filed in this matter indicating it would be held on June 10, 2004.
 {¶ 13} "On May 8th, the Defendant was aware that he was being interviewed by an individual to evaluate him for the purpose of this hearing. So the Court effectively will find, based upon the timing of the record, that this motion is not timely filed and will not delay this hearing. So that motion is denied."
 {¶ 14} After hearing testimony from Dr. Hopes and argument from counsel, the trial court proceeded to designate Thomas a sexual predator. It then sentenced him to the statutory maximum term of five years in prison for each of his four thirddegree felony convictions but ordered the five-year terms to be served concurrently. The trial court then ordered Thomas' sentence in this case to be served consecutive to a two-year sentence that he previously had received in Montgomery County for engaging in unlawful sexual conduct with the same victim. This timely appeal followed.
 II. Analysis {¶ 15} In his first assignment of error, Thomas contends the trial court erred in overruling his motion to hire Dr. Bromberg to assist him at state expense. In particular, he reiterates his argument that an expert psychologist's help was necessary to enable him to evaluate Dr. Hopes' findings, which included the results of two tests, the MMPI and the Static-99.
 {¶ 16} Our resolution of Thomas' assignment of error involves analysis of two issues: (1) whether a continuance was warranted and (2) whether Thomas was entitled to a court-appointed expert to assist him. We apply an abuse-of-discretion standard to a trial court's ruling on a motion for a continuance. State v. Broom (1988), 40 Ohio St.3d 277, 288. We also apply an abuse-of-discretion standard to a trial court's ruling on a motion to appoint an expert at state expense in connection with a sexual-offender classification hearing. State v. Eppinger,91 Ohio St.3d 158, 162, 2001-Ohio-247. Such an appointment is warranted if the trial court determines, "within its sound discretion, that such services are reasonably necessary to determine whether the offender is likely to engage in the future in one or more sexually oriented offenses[.]" Id.
 {¶ 17} Having reviewed the record, we find no abuse of discretion in the trial court's decision to overrule Thomas' motions for a continuance and for a courtappointed expert. On April 27, 2004, the trial court filed an entry ordering Thomas to be examined by Dr. Hopes. She subsequently examined him on May 8, 2004, and completed her report on May 25, 2004. Thomas submitted his motion in early June 2004, shortly before the sexual-offender classification hearing. In the trial court, defense counsel argued that he could not have filed the motion earlier because he did not receive Dr. Hopes' report until early June 2004. He asserted that he was unaware of the need to hire an expert until after reviewing her work. In support, he noted Dr. Hopes' reliance on the MMPI and Static-99 tests and argued that he required an expert to review her findings about those tests.
 {¶ 18} The trial court did not abuse its discretion in finding the foregoing argument to be unpersuasive. The Sixth District Court of Appeals recently rejected much the same argument in State v. Kirkwood,
Lucas App. No. L-00-1380, 2003-Ohio-6757, which also involved a defendant's request for a continuance to hire an expert in sexual-offender classification proceedings. There the appellant asserted "that he was not aware of the need for another expert opinion until shortly before the hearing on November 3, 2000, because Dr. Houtler's report was not filed until October 24." Id. at ¶ 45. On appeal, the Sixth District rejected this argument, reasoning "that appellant chose, as a matter of strategy, to wait and evaluate Dr. Houtler's report rather than seek an independent evaluation at the earliest opportunity."
 {¶ 19} Likewise, in the present case, we discern no reason why defense counsel could not have sought to hire an expert before reviewing Dr. Hopes' report. Thomas underwent an examination by Dr. Hopes on May 8, 2004. On that date, he obviously knew that he had been subjected to the MMPI and Static-99 tests and that Dr. Hopes was evaluating him for purposes of the sexual-offender classification hearing. Thus, defense counsel could have sought, at that time, to hire an expert to review Thomas' performance on the tests or to conduct an independent examination.
 {¶ 20} Even without regard to the continuance issue, we also conclude that Thomas failed to demonstrate the need for a court-appointed expert at state expense. In making this determination, we first note our disagreement with his assertion that the State sought out Dr. Hopes as a witness on its behalf. To the contrary, the record reflects that the trial court appointed Dr. Hopes at the request of the Greene County Adult Probation Department. We have recognized that "[i]n criminal cases, the prosecutor represents the executive branch of government. The judiciary is an independent branch of government, and the probation department is an arm of the trial court." State v. Hall (Feb. 4, 2000), Greene App. No. 99 CA 94, Thus, the initial request for a court-appointed expert came not from the State but from a department that serves as an extension of the trial court itself. In State v. Nickels (May 4, 2001), Clark App. No. 00CA0026, we reasoned that a defendant has no right to the assistance of his own court-appointed expert to refute the findings of another expert who was appointed by the trial court. Id. at *2.
 {¶ 21} Finally, we find little or no prejudice to Thomas as a result of the trial court's ruling on his motion for the appointment of an expert at state expense. Defense counsel explained that he needed his own expert psychologist to challenge Dr. Hopes' findings about Thomas' performance on the MMPI and Static-99 tests. During the sexual-offender classification hearing, however, Dr. Hopes testified that the Static-99 test, which was the only test that produced a valid result, was a strictly objective or "actuarial" test. It consisted of assessing "points for a number of previous offenses and age and things like that." Similarly, Dr. Hopes explained that she found the MMPI test results to be invalid based solely on an objective scoring mechanism. It consisted of nothing more than placing a template over filled-in ovals on Thomas' answer sheet. As a result, we believe it is highly unlikely that having a second psychologist review the results of either test would benefit Thomas. For the foregoing reasons, we find no abuse of discretion by the trial court and we overrule Thomas' first assignment of error.
 {¶ 22} In his second assignment of error, Thomas claims the trial court erred in designating him a sexual predator.
 {¶ 23} In order to adjudicate a defendant a sexual predator, a trial court must find by clear and convincing evidence that the defendant has been convicted of or pled guilty to a sexually oriented offense and that "he is likely to engage in the future in one or more sexually oriented offenses." R.C. § 2950.01(E); R.C. 2950.09(B)(3); State v. Eppinger,91 Ohio St.3d 158, 2001-Ohio-247. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 24} Thomas' convictions for unlawful sexual conduct with a minor unquestionably are sexually oriented offenses. R.C. § 2950.01(D)(1)(b)(i). Thus, the only real issue before the trial court was whether Thomas is likely to engage in another sexually oriented offense. In determining the likelihood of recidivism, a trial court is mandated by R.C. § 2950.09(B)(3) to consider the factors relating to the offender set out at paragraphs (a) through (j) therein. While the statute deems the factors relevant,
they are only potentially relevant. State v. Thompson, 92 Ohio St.3d 584,2001-Ohio-1288. Some may not be applicable in a given case, and "the judge has the discretion to determine what weight, if any, he or she will assign to each guideline." Id. at 589. Because the "guidelines do not control a judge's discretion," a factor irrelevant to a particular offender is entitled to no weight. Furthermore, a court may consider any other evidence it deems relevant. Id. at 587.
 {¶ 25} The statutory guidelines are:
 {¶ 26} "(a) The offender's age;
 {¶ 27} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 28} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 29} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 30} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 31} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 32} "(g) Any mental illness or mental disability of the offender;
 {¶ 33} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 34} "(I) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 35} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. § 2950.09(B)(3).
 {¶ 36} The trial court conducted a sexual-offender classification hearing as part of the sentencing proceeding in this case. At that hearing, Dr. Hopes testified regarding the likelihood that Thomas would commit future sex offenses. She explained that her opinions on the subject were based on her evaluation of Thomas' personal history, his performance on two written tests, the MMPI and the Static-99, and a seventy-five minute interview with him. According to Dr. Hopes, the MMPI includes "validity scales" to assist her in determining whether a test-taker is being defensive or trying to "look too good." Dr. Hopes testified that Thomas' MMPI score was deemed invalid. As for his performance on the Static-99 test, Dr. Hopes explained that he exhibited a "moderate to high" risk of recidivism. She defined this level of risk as "somewhere slightly below 50 or slightly above 50 percent, which means that is the percentage of likelihood of him committing another sexually oriented offense within 15 years." After considering all of the information before her, however, in light of the statutory guidelines set forth above, Dr. Hopes concluded that Thomas' risk of committing another sexually oriented offense was high.
 {¶ 37} In designating Thomas a sexual predator, the trial court addressed the relevant statutory factors and made extensive findings as follows:
 {¶ 38} "* * * The first factor for the Court to consider is the offender's age, and as it has been pointed out, the Defendant's age is 45, and it's been determined that slightly reduces this factor. However, once again, the court will mention this from time to time, the nature of this offense was one with a juvenile and there was a significant difference in age in regard to the age of the offender and the age of the individual who was the victim in this case, and the Court takes that into consideration.
 {¶ 39} "Secondly, the offender's prior criminal history regarding all the offenses, including sex offenses. The Court has found in the presentence investigation that the Defendant does have prior felony convictions; that the Defendant has been sentenced to prison on three occasions from Pennsylvania as well as from Ohio.
 {¶ 40} "We've pointed out the fact that Defendant has a conviction for Indecent Assault in Pennsylvania; Possession of Cocaine in Florida; an Aggravated Burglary conviction in Trumbull County, Ohio; as well as the Unlawful Sexual Conduct counts from Montgomery County, which were from the same factual basis as this particular case; as well as Contributing to Juvenile Delinquency in Trumbull County, which has, likewise, flown from this case.
 {¶ 41} "The prior criminal history of the Defendant is a factor that the Court takes into consideration, which would make a finding that the risk is increased.
 {¶ 42} "The next factor is the age of the victim. In this particular case, the Court finds that the victim in this case is 15 years old, and the Court agrees with the finding that risk is increased when an adolescent victim is involved, and the Court also notes from the report of Exhibit 1 that there's also information regarding a second person by the name of * * * who was 16 years old at the time the Defendant had contact with her.
 {¶ 43} "The Court further finds that in a review of the Defendant's property, as a result of search warrants and an investigation, there are also findings as to other indications that the Defendant has been making contact with other youthful individuals ranging from ages 13 through 19. Also in regard to information on his computer were various pictures of young girls, maps of various locations of the United States, a list of screen names used by young girls broken down by addresses, phone numbers and breast size and clothing size, and the Court takes these factors into consideration in finding that this is a high risk factor under this particular criteria.
 {¶ 44} "The next factor is whether the offense involved multiple victims. Again, in this matter there is only one victim, so this factor does not apply; however, under other factors the Court notes in the PSI and Exhibit 1 those matters which the Court previously addressed for the record.
 {¶ 45} "The next factor is whether the offender used drugs or alcohol to impair the victim or prevent the victim's resistance. The information provided through the Police report in this matter, as well as Exhibit 1 and the presentence report indicates the Defendant did, in fact, use alcohol and drugs during the course of this contact with the adolescent in this particular matter, and [the Court] finds as to that particular criteria that has been determined to be involved in this particular case.
 {¶ 46} "I note that the report does indicate research has determined no relationship between this factor and the increased risk of recidivism, and the Court accepts that. The Court also notes that those additional, if you will, illegal possession and use of narcotics with a juvenile and alcohol helped, in fact, to facilitate this case.
 {¶ 47} "Whether the offender has been convicted of or previously pled guilty to any criminal offense that was a prior sex offense or whether the offender participated in available programs. Again, I will make reference to the testimony of the witness in this particular case that during cross examination thoroughly addresses this particular matter as well as on redirect. The Court finds that there are prior convictions in this particular case; however, the sex offenses appear to be more in the nature of offenses that occurred around this particular time period.
 {¶ 48} "I temper that with the finding of this Court that there was information found in the Defendant's property that this would not necessarily have been at the time an isolated circumstance and that the Defendant was, if nothing else, attempting to engage other adolescents in similar types of behavior, or at least gathering information that could have resulted in that kind of behavior.
 {¶ 49} "The next factor for the Court to consider is any mental illness or disability of the offender, and the Court finds that based upon the evidence the Defendant is not mentally ill. He does have a criteria for being diagnosed as having antisocial personality disorder which the evidence in this case will indicate increases a sex offender's risk of recidivism, and the Court makes a finding to that particular criteria.
 {¶ 50} "The nature of the offender's sexual conduct with the victim and whether it demonstrated a pattern of abuse. Once again, the Court has reviewed and is well aware of the circumstances of the Defendant's conduct, not only with the victim in this particular case but also the 16 year old in South Carolina and also the matters regarding the Internet and information found in his property. This Court is of the opinion that this demonstrates a pattern of serial conduct, which in a specific nature as to this criteria, is an increased risk of recidivism based upon this particular evidence.
 {¶ 51} "The next factor for the Court to consider is whether the offender displayed cruelty, and it's been brought out that he did not, and, therefore, this factor does not have any weight in the Court's determination.
 {¶ 52} "The next factor is any additional behavioral characteristics that contribute to the offender's conduct, and the Court adopts the findings of the report that does reflect the fact that the Defendant has a prior criminal history and apparently has not learned from the fact that he was convicted and punished for those offenses, having served previous prison terms, and was completely aware of the fact that this conduct was criminal and illegal, yet proceeded forward.
 {¶ 53} "It is interesting for the Court to also note another factor involved is the — in determining the predatory nature of these offenses, that it involved adolescents, adolescents who were perhaps targeted by their own limitations which made — as the witness testified, makes the use of force unnecessary to cause compliance by young adolescents and, of course, primarily that's why we have laws to prevent this kind of conduct.
 {¶ 54} "It's also interesting to note, and the Court does make a finding that the Defendant's conduct with both of these individuals, indicating that he wanted to be engaged, wanted to give them a wedding ring, said he was in love with them, implied, in both circumstances, and at one point the record reflects that the Defendant denied that these occurred, but it seems rather incredible that these two individuals who had not met each other would have come up with the same answer.
 {¶ 55} "The Court having considered these factors, has also reviewed the statement of the Defendant's conduct with the particular individual as noted in a statement that was handwritten by the victim in this particular case, and I do refer to her as a victim in the true context of that word. I will not read that statement, but the terms of that statement clearly show very horrible behavior, despicable behavior on the part of the Defendant.
 {¶ 56} "Having made these considerations, the Court is guided clearly by the law in terms of what the Court's determination should be, and having found the factors on the record, the Court does find by clear and convincing evidence that the Court does believe the Defendant is likely to engage in one or more similar offenses in the future by clear and convincing evidence."
 {¶ 57} On appeal, Thomas does not dispute the foregoing findings underlying the trial court's sexual-predator determination. Rather, he first argues that his advancing age while incarcerated will reduce his likelihood of reoffending. In support, Thomas contends Dr. Hopes estimated his likelihood of committing another sex offense at "slightly above or slightly below 50 percent." Given Dr. Hopes' testimony that older offenders are less likely to offend than younger offenders, Thomas reasons that his likelihood of reoffending upon his release from prison in several years necessarily will be less than fifty percent, which he believes is insufficient to support a sexual predator designation.
 {¶ 58} Upon review, we find Thomas' argument to be unpersuasive. As an initial matter, Dr. Hopes did not conclude that he had approximately a fifty percent likelihood of reoffending. Rather, she testified that his performance on the Static-99 test placed his level of risk at roughly fifty percent. Based on all of the information before her, however, including her review of his personal history and conclusions drawn from her interview with him, Dr. Hopes opined that Thomas actually was at a high risk for committing another sexually oriented offense. Moreover, we find no error in the trial court's failure to give controlling weight to the fact that Thomas is forty-five years old and obviously will age a few more years while incarcerated. The trial court recognized that sex offenders generally become less likely to reoffend as they age. Based on all of the other considerations set forth above, however, it nevertheless found clear and convincing evidence that Thomas was likely to commit another sexually oriented offense.
 {¶ 59} In a second argument, Thomas notes that the trial court's sexualpredator finding is inconsistent with his designation as a sexually oriented offender by a Montgomery County judge in another case. Although the record in that case is not before us, Thomas contends it involved his unlawful sexual conduct with the same juvenile around the same time period as the offenses underlying the present appeal. Given that he was found to be a sexually oriented offender in that related case, Thomas argues that the trial court erred in finding clear and convincing evidence that he was a sexual predator in this case.
 {¶ 60} Upon review, we are unpersuaded by the foregoing argument for several reasons. Thomas asserts that the psychologist who evaluated him in the Montgomery County case found that he was not likely to reoffend, thereby establishing a conflict with the opinion of Dr. Hopes. Unfortunately for Thomas, no evidence in this case supports his assertion. Because the record from the Montgomery County case is not before us, we have no way of knowing what the psychologist in that case found. For all we know, the psychologist in the Montgomery County case could have found a likelihood of recidivism and the Montgomery County judge could have rejected that conclusion. Moreover, the fact that the Montgomery County judge designated Thomas a sexually oriented offender does not demonstrate error in the present case. As the State properly notes, the evidence before the judge in the Montgomery County case may have been different. Even if the evidence were identical in both cases, however, it still does not follow that the trial court erred in this case simply because the judge in another case reached a contrary conclusion. It is equally possible that the record supported a sexual predator designation in the Montgomery County case, notwithstanding the judge's failure to make such a finding.
 {¶ 61} In short, we have reviewed the record in this case, and we are persuaded that the trial court properly found, by clear and convincing evidence, that Thomas is likely to commit another sexually oriented offense. Accordingly, we overrule his second assignment of error.
 {¶ 62} In his third assignment of error, Thomas contends the trial court failed to make the findings necessary to impose a statutory maximum five-year sentence for unlawful sexual conduct with a minor.[2]
 {¶ 63} When a trial court imposes a maximum sentence, it must comply with R.C. § 2929.14(C). In relevant part, this statute provides that "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, [or] upon offenders who pose the greatest likelihood of committing future crimes * * *."
 {¶ 64} At the sentencing hearing, the trial court did not find that Thomas had committed the "worst form" of unlawful sexual conduct with a minor. Nor did it find that he posed the "greatest likelihood" of committing future crimes. Instead, the trial court declared that "[t]he Defendant does pose a likelihood of recidivism." Likewise, in its journal entry, the trial court found that Thomas "poses a likelihood of recidivism."
 {¶ 65} Despite the trial court's failure to make one of the findings required by R.C. § 2929.14(C), the State urges us to find substantial compliance with the statute. The State also contends the record would support a finding that Thomas committed the worst form of unlawful sexual conduct with a minor and that he poses the greatest likelihood of committing future crimes.
 {¶ 66} Upon review, we conclude that the trial court failed to satisfy the requirements of R.C. § 2929.14(C). In State v. Harris, Greene App. No. 2002 CA 106, 2003-Ohio-6531, we addressed the same issue in an appeal involving a maximum sentence imposed by the same trial court judge. There, as here, the trial court imposed a maximum sentence based on a finding that the defendant posed "a likelihood of recidivism." Id. at ¶ 9. On appeal, we held that "the trial court's finding that Harris posed `a likelihood of recidivism' does not comport with the statutory requirement that maximum sentences be imposed only on those whom are found to pose the greatest likelihood of recidivism." Id. at ¶ 11. As a result, we sustained the appellant's assignment of error, reversed the trial court's judgment, and remanded the matter for resentencing. Id. at ¶ 12-13.
 {¶ 67} In the present case, we again hold that the trial court failed to satisfy R.C. § 2929.14(C) when it found that Thomas poses "a likelihood of recidivism." A finding that a defendant poses "a likelihood" of recidivism is not the same as a finding that he poses "the greatest likelihood" of recidivism. Similarly, the fact that the trial court found Thomas "likely" to commit future sexually oriented offenses for purposes of his sexual-predator designation does not necessarily mean that he poses "the greatest likelihood" of doing so. Moreover, in Statev. Liming, Greene App. No. 03CA43, 2004-Ohio-168, we rejected the "substantial compliance" argument that the State advances herein. Id. at ¶ 27. We also have refused to overlook a trial court's non-compliance with R.C. § 2929.14(C) based on an argument that the record would support the required findings. Id. Accordingly, we reject the State's arguments and sustain Thomas' third assignment of error.
 {¶ 68} In his fourth assignment of error, Thomas argues that the trial court erred in ordering his sentence to be served consecutive to the sentence imposed in the earlier Montgomery County case. In particular, he contends the trial court failed to make the findings necessary to impose consecutive sentences and to give reasons for those findings.[3]
 {¶ 69} When a trial court requires that multiple sentences be served consecutively, it must comply with R.C. § 2929.14(E)(4) which provides:
 {¶ 70} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 71} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 72} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 73} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 74} A "court is permitted by R.C. 2929.14(E)(4) to order consecutive sentences only after certain findings are made. By requiring the court to then state the reasons for those findings, R.C.2929.19(B)(2)(c) obliges the court to not only have reasons but also to state what those reasons are. Further, in stating its reasons the court must connect those reasons to the finding which the reason supports. The court cannot merely pronounce causes that objectively may be its reasons. The court must also identify which of those causes are the particular reasons for each of the statutory findings the court made."State v. Rothgeb, Champaign App. No. 02CA7, 2003-Ohio-465, at ¶ 25.
 {¶ 75} In the present case, the trial court stated the following with regard to consecutive sentences:
 {¶ 76} "The Court noting that the Defendant is currently serving a term of incarceration from the sentence from Montgomery County finds in this particular case that a consecutive sentence to that particular sentence is necessary to protect the public from future crime by the Defendant and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger the Defendant poses to the public.
 {¶ 77} "And the Court finds that the Defendant's criminal history demonstrates that consecutive sentences are needed to protect the public from future crime from this Defendant, and the reasons for these findingshave been previously stated on the record and are in the report and theExhibits provided to this Court." (Emphasis added).
 {¶ 78} Upon review, we conclude that the trial court made the requisite findings to impose consecutive sentences. As mandated by R.C. § 2929.14(E)(4), the trial court found that: (1) consecutive sentences were necessary to protect the public from future crime; (2) consecutive sentences were not disproportionate to the seriousness of Thomas' conduct and to the danger he poses to the public; and (3) Thomas' history of criminal conduct demonstrates the need for consecutive sentences to protect the public from future crime.
 {¶ 79} We are persuaded, however, by Thomas' argument that the trial court failed to supply reasons for its findings, as required by R.C. §2929.19(B)(2)(c). Before imposing consecutive sentences, a trial court must make the foregoing findings and give reasons to support those findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at paragraph one of the syllabus. When stating its reasons, a court also must connect each reason to the finding the reason supports. In other words, "[t]he court cannot merely pronounce causes that objectively may be its reasons. The court must also identify which of those causes are the particular reasons for each of the statutory findings the court made." Rothgeb, supra, at ¶ 2. "An unrelated `laundry list' of reasons that doesn't correspond to the statutory findings the court makes presents a difficult puzzle to solve, and requires an appellate court to try to surmise what the trial court's reasons were." Id. at ¶ 27.
 {¶ 80} In the present case, the trial court merely stated that the reasons for its consecutive-sentence findings "have been previously stated on the record and are in the report and the Exhibits provided to this Court." As set forth above, the trial court did make extensive findings regarding Thomas' status as a sexual predator. Although the reasoning underlying some of those findings also might support the imposition of consecutive sentences, our task is not to ferret out a plausible rationale for the trial court's findings. The trial court's obligation to give reasons for its findings is not an onerous one. If the trial court briefly had identified which parts of its lengthy sexual-predator analysis also supported the imposition of consecutive sentences, we would find R.C. § 2929.19(B)(2)(c) satisfied. In our view, however, the trial court cannot satisfy the statute by incorporating all
of its prior analysis without any specific discussion of its rationale for imposing consecutive sentences. Such a procedure leaves us to guess which parts of the trial court's prior analysis support which of its consecutive-sentence findings. Accordingly, we sustain Thomas' fourth assignment of error.
 III. Conclusion {¶ 81} Based on the reasoning set forth above, the judgment of the Greene County Common Pleas Court is hereby affirmed in part and reversed in part, and this cause is remanded for resentencing.
Wolff, J., and Grady, J., concur.
[1] Although Thomas' motion was not time-stamped as filed until June 15, 2004, the record suggests that the trial court had received a copy of the motion prior to that date. The certificate of service on the motion is dated June 4, 2004. The trial court held the sentencing and sexual-offender classification hearing on June 10, 2004. During the hearing, Thomas' counsel orally "renewed" his motion to hire a psychologist at state expense, and the trial court registered no surprise. Thus, the trial court appears to have been aware of the motion despite the fact that it was not properly filed until five days after the hearing.
[2] The maximum sentence for each count of unlawful sexual conduct with a minor was five years because the offense was charged as third-degree felony given the age difference between Thomas and the victim.
[3] Parenthetically, we note that Thomas does not dispute a trial court's general ability to order a sentence to be served consecutive to an earlier sentence imposed in another county. See State v. White
(1985), 18 Ohio St.3d 340, 342 (recognizing that a trial court may order a sentence to be served consecutive to an existing sentence imposed in another court).