OPINION
{¶ 1} Defendant, Brian R. Liming, appeals from his conviction and resulting sentence for a violation of R.C. 2903.06(A)(2), aggravated vehicular homicide, which were entered on Liming's guilty plea.
 {¶ 2} R.C. 2903.06(A) provides: "No person, while operating or participating in the operation of a motor vehicle . . . shall cause the death of another . . . in any of the following ways:" Four ways are set out. Paragraph (1) of that section states: "As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance." Paragraph (2) states: "Recklessly."
 {¶ 3} R.C. 2903.06(A)(1), which is founded on an underlying violation of R.C. 4511.19(A), the DUI statute, is a second degree felony for which a prison term is mandatory. R.C 2903.06(B)(1)(a), (C). Second degree felonies are punishable by definite terms of incarceration of two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2).
 {¶ 4} R.C. 2903.06(A)(2), which is founded on reckless conduct, is a felony of the third degree. R.C. 2903.06(B)(1)(b). A prison term is not mandated. Therefore, a community control sanction may be imposed in lieu of incarceration. R.C. 2929.15(A)(1). If a prison term is imposed, it must be for a definite term of incarceration of two, three, four, or five years. R.C. 2929.15(A)(1).
 {¶ 5} Defendant Liming was charged by indictment with two violations of R.C. 2903.06, both arising from the death of Thomas Hawkins, a passenger in Liming's pick-up truck who was killed when it went off the road. Count I of the indictment alleged a violation of R.C.2903.06(A(1), the version of the offense alleging an underlying DUI offense. Count II alleged a violation of R.C. 2903.06(A)(2), the version founded on reckless conduct. It is undisputed that because the two versions of the same offense are allied offenses of similar import, Liming could be convicted of only one and the State would eventually have to dismiss the other charge. R.C. 2942.25(A).
 {¶ 6} Liming was injured in the accident in which Thomas Hawkins was killed. He was taken to Miami Valley Hospital in Dayton, where his blood was drawn. A subsequent blood-alcohol analysis determined that Liming's blood had a concentration of 0.124 per cent by weight of alcohol. R.C. 4511.19(A)(2) prohibits operating a motor vehicle with a concentration of 0.100 per cent or more.
 {¶ 7} Liming filed a Crim.R. 12(C)(3) motion to suppress evidence of his blood alcohol test results. The trial court conducted an evidentiary hearing and thereafter denied the motion. Liming subsequently entered a plea of guilty to the R.C. 2903.06(A)(2) offense charged in Count II of the indictment, alleging the reckless conduct offense. The State dismissed Count I, which charged the R.C. 2903.06(A)(1) offense based on a DUI violation. The court referred the matter to its probation department for a presentence investigation and report.
 {¶ 8} The sentencing hearing was held on May 16, 2003, approximately two months after Liming had entered his guilty plea. Liming was given the probation officer's written report shortly before the hearing. It contains the following conclusion and recommendation:
 {¶ 9} "It is the recommendation of the Greene County Adult Probation Department that after reviewing Ohio Revised Code §2929.11(A) and 2929.13(B) the offender is not amenable to available community sanctions.
 {¶ 10} "The defendant tested above the legal limit for alcohol and the toxicology report showed the defendant has used marijuana at some point. Although this was an accident and not an intentional crime, one life was lost.
 {¶ 11} "Therefore, it is respectfully recommended the Court sentence the defendant to the Department of Rehabilitation and Correction (Correctional Reception Center) for a period of 4 years for a violation of O.R.C. 2903.06(A)(2), Aggravated Vehicular Homicide, a felony of the third degree in Count II. Count I was dismissed. It is further recommended that no fine be imposed. The defendant is entitled to 1 day jail time credit.[1]
 {¶ 12} "It is also recommended that the defendant's driver's license be revoked pursuant to § 4507.16 of the Ohio Revised Code."
 {¶ 13} Liming asked for a continuance to present evidence rebutting the statement in the report concerning the test results indicating an elevated blood alcohol level. His attorney stated that witnesses were available, including a police officer who had stopped Liming about one-half hour before the accident and who would testify that Liming was "completely sober." (T. 5, 6). Liming stated that he'd had nothing at all to drink, and that he and Hawkins had used marijuana the day before the accident.
 {¶ 14} The trial court denied Liming's motion for a continuance. The court did, however, permit Liming to present the testimony of his parents. Each stated that when they saw Liming at the hospital after the accident he did not show symptoms of being under the influence of alcohol. Liming and the State stipulated that, if called, the police officer who had stopped Liming before the accident would testify concerning Liming's demeanor, but they didn't further stipulate what his demeanor was.
 {¶ 15} Liming's attorney also moved, alternatively, to vacate Liming's guilty plea. He contended that the parties had stipulated when the plea was entered that the accident in which Thomas Hawkins was killed had resulted from a defective tire on Liming's pick-up truck. He further contended that, when he and Liming met with the probation officer, the officer agreed to confine the grounds for his sentencing recommendation to the matter of the defective tire.
 {¶ 16} The trial court likewise denied Liming's motion to vacate his guilty plea. The court stated that "even though the factual stipulation by the Prosecutor at the time of the plea may have been something regarding a(n) under inflated tire, the court certainly cannot just ignore the fact that there was alcohol testing . . . at Miami Valley Hospital." (T. 13). The court added that there was no underlying agreement regarding the plea that would prevent the court from considering the evidence in imposing a sentence. (T. 14). The court later emphasized that it "cannot just take the fact that there was a high concentration of alcohol in your blood and shove that under the rug and ignore it" (T. 41), adding that "the court has to take all relevant facts into account, and those are definitely relevant facts." (T. 42).
 {¶ 17} At the conclusion of the hearing the trial court sentenced Liming to serve a five year term of incarceration, the maximum available term. R.C. 2929.15(A)(1). Liming filed a timely notice of appeal. The matter is now before us on three assignments of error. To facilitate our analysis, we will consider Liming's assignment in reverse order.
 {¶ 18} Third Assignment of Error
 {¶ 19} "The matter should be remanded for resentencing because the trial court committed two errors in sentencing."
 {¶ 20} R.C. 2929.12 requires the court to consider certain seriousness and recidivism factors when it imposes a sentence within an available statutory range of sentences. Paragraph (B)(2) of that section requires the court to consider whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." Defendant argues that this consideration is tautological with respect to a homicide offense, because the victim's death necessarily constitutes serious physical harm.
 {¶ 21} In its sentencing statement the court found that "there was physical harm to a person." (T. 44). The court made its finding with reference to R.C. 2929.13(B). That section concerns felonies of the fourth and fifth degree. Defendant was convicted of a felony of the third degree, so the finding was not required. The court was nevertheless required by R.C. 2929.12(B)(2) to consider whether serious physical harm was suffered by the victim of the offense when imposing its sentence.
 {¶ 22} Defendant first argues that the serious physical harm consideration ought not apply to a homicide offense, analogizing to the "double count" provisions in the Federal sentencing law that preclude reference to the same conduct to support two or more sentence enhancement provisions. We do not see a direct similarity. The matter of the victim's death is an element of the offense of aggravated vehicular homicide as R.C 2903.06(A) defines it. The serious physical harm consideration in R.C. 2929.12(B)(2) pertains to the sentence the court imposes for the offense. Because the two apply in different ways, we find no inherent conflict.
 {¶ 23} In any event, R.C. 2929.12(B)(2) requires the court only to consider whether the victim suffered serious physical harm "as indicating that the offender's conduct is more serious than conduct normally constituting the offense." Id. As an R.C. 2903.06 aggravated vehicular homicide offense always involves a death, the same "serious physical harm" factor applies in every case. That uniform application neutralizes the matter, so as to make any one instance of aggravated vehicular homicide no more or less serious than any others founded on the same statutory grounds. In other words, every person who is found guilty of committing the offense is, subject to a like result, at least with reference to the same finding of seriousness. We cannot find that Defendant Liming suffered any prejudice on that account.
 {¶ 24} Liming's second argument of error portrays reversible error that requires us to reach the trial court's sentencing judgment and remand for resentencing.
 {¶ 25} Liming was sentenced to five years imprisonment upon his conviction for a third degree felony, the maximum available term. R.C.2929.15(A)(1). When it imposes a maximum available term of imprisonment, the court must make certain findings. R.C. 2929.14(C). The two findings that might apply to Liming's offense are that he committed the worst form of the offense and/or poses the greatest likelihood of committing future crimes. Id. The court made neither finding.
 {¶ 26} Liming's sentence was imposed upon his conviction for a single offense. When the court imposes a maximum available sentence in that instance, the court must make a finding that gives its reasons for selecting the sentence it imposed. R.C. 2929.19(B)(2)(d). The court stated no such reasons.
 {¶ 27} The Supreme Court of Ohio has held that either or both of the foregoing omissions constitutes reversible error, requiring resentencing. State v. Edmonson (1999), 86 Ohio St.3d 324. The State contends that the rule of substantial compliance should apply, because there is ample support in the record for the findings the court was required to make. Edmonson doesn't recognize application of the substantial compliance rule. Indeed, the Supreme Court's more recent holding in State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, requiring the court to orally pronounce the required statutory findings and reasons from the bench, undermines application of the substantial compliance rule.
 {¶ 28} The trial court erred when it sentenced Defendant-Appellant Liming to a maximum available prison term for a single offense absent the findings and reasons that R.C. 2929.14(C) and 2929.19(B)(2)(d) require the court to make in order to impose such a sentence. The third assignment of error is sustained, in that part. Otherwise, it is overruled.
 {¶ 29} Second Assignment of Error
 {¶ 30} "The trial court committed an abuse of discretion by denying appellant's petition to vacate the guilty plea."
 {¶ 31} Motions to withdraw pleas of guilty and no contest are governed by Crim.R. 32.1, which states:
 {¶ 32} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed, but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 33} Crim.R. 32.1 motions to withdraw a plea made after a convicted defendant learns of his probable sentence should be weighed under the more stringent "manifest injustice" standard of Crim.R. 32.1 for post-sentence motions. State v. Davis (Jan. 5, 2001), Montgomery App. No. 18172, Grady, J., concurring. "A `manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her."State v. Hartzell (Aug. 20, 1999), Montgomery App. No. 17499, at pp. 4-5.
 {¶ 34} Whether to grant a motion made pursuant to Crim.R. 32.1 is a matter committed to the trial court's sound discretion. State v. Xie
(1992), 62 Ohio St.3d 521. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.3d 151, 157.
 {¶ 35} Defendant's motion was made before the court imposed a sentence but after Defendant had learned of the contents of the presentence investigation report; specifically, the matter of his blood alcohol level and the recommendation of a maximum sentence of five years. In respect to the court's consideration of those matters in imposing its sentence, Liming's burden was to show that their consideration created a manifest injustice.
 {¶ 36} Liming entered a guilty plea to an R.C. 2903.06(A)2) violation. A plea of guilty is a complete admission of guilt. Crim.R. 11(B)1). We have held that evidence of blood-alcohol test results that show a concentration of alcohol greater than the maximum that R.C.4511.19(A)(2) permits is probative of the element of recklessness in an aggravated vehicular homicide offense. State v. Davis (1983),13 Ohio App.3d 265. That being the case, we cannot find that the same evidence is excluded from the court's proper consideration when the court imposes a sentence for an R.C. 2903.06(A)(2) violation, especially as sentencing involves broader considerations than the particular conduct out of which a convicted defendant's offense arose. Indeed, the court may even consider uncharged crimes. State v. Tutt (1988), 44 Ohio App.3d 138.
 {¶ 37} We cannot find that the trial court abused its discretion when it overruled Liming's motion to vacate his plea on the manifest injustice standard of Crim.R. 32.1. The second assignment of error is overruled.
FIRST ASSIGNMENT OF ERROR
 {¶ 38} "The trial court committed an abuse of discretion when it refused to continue the sentencing hearing, and that decision denied appellant due process of law."
 {¶ 39} Liming asked the court to continue the sentencing hearing to allow him to rebut the assertion in the presentence investigation report that his blood-alcohol level had tested at 0.124 per cent after the accident. The trial court denied the motion, though it did permit Liming to present evidence of limited probative value concerning his sobriety.
 {¶ 40} Liming's parents both testified that they visited him at the hospital shortly after the accident and that he did not smell of alcohol or appear intoxicated. That information was before the court, as was the stipulation discussed above. The significance of the stipulation appears to be an inference that the Beavercreek officer who had stopped Liming about one half-hour before the accident would not have let him drive away had Liming appeared intoxicated.
 {¶ 41} A presentence investigation report serves to inform the sentencing judge of relevant aspects of the defendant's history, so that the court will sentence the defendant in an informed, responsible, and fair manner. See Machibroda v. United States (N.D. Ohio, 1973),360 F. Supp. 780. The report and its contents are governed by Crim.R. 32.2 and R.C. 2951.03. Paragraph (B)(1) of that section provides that "the court, at a reasonable time before imposing sentence shall permit the defendant or the defendant's counsel to read the report." Recognizing that this typically occurs only moments before the sentencing hearing, R.C. 2951.03(B)(2) states:
 {¶ 42} "Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report."
 {¶ 43} Liming didn't challenge the factual accuracy of the blood-alcohol test results, at least not with respect to the procedures that were followed to obtain those results. That issue had been resolved against him when the court denied Liming's motion to suppress. Instead, Liming's challenge was to the implication the test result evidence created; that he was under the influence of alcohol when the accident occurred. Thus, he wanted to present evidence that he was sober.
 {¶ 44} The court was not required to act on the implication of intoxication or impairment the test results created. Operating a vehicle with a blood-alcohol level above the statutory maximum is contrary to the public policy of the State of Ohio, and the court could rely on that alone without reaching the matter of actual impairment.
 {¶ 45} Nevertheless, the court is charged by R.C 2929.12 to consider the seriousness of an offender's conduct when it imposes a sentence. If Liming's ability to operate a motor vehicle was not substantially impaired by alcohol, notwithstanding the statutory limit, then his reckless conduct was arguably less serious, meriting less than the maximum sentence.
 {¶ 46} Narrow as this predicate cause may be, we believe that Liming was entitled to the opportunity that R.C. 2951.03(B)(2) affords him to challenge the presentence investigation report. The State argues that he was given that opportunity, when his parents testified. However, their testimony concerned Liming's condition after the accident when he had been hospitalized for injuries, not his condition before. Liming's condition before the accident was far more probative of his contention that he was not impaired.
 {¶ 47} Liming requested a continuance to obtain the needed information. The court denied his request. We believe that the record sufficiently portrays the surprise on which Liming's request was founded.
 {¶ 48} The State dismissed the more serious R.C. 2903.06(A)(1) aggravated vehicular homicide charge based on an alleged DUI violation, which depended on the results of Liming's blood alcohol test. The court had ruled the test results admissible. Nevertheless, Liming had some reason to believe that the State's decision to drop the R.C. 2903.06(A)(1) charge removed the blood-alcohol test results from consideration.
 {¶ 49} Liming had additional reason to believe that the test results were not a matter determinative of the court's sentencing decision because, according to Liming, the State had stipulated at the plea proceeding that the cause of the accident was a defective tire. The record before us contains no transcript of the plea proceeding. The State argues that there was no agreement of any kind. However, the court's comment, quoted above, indicates that some such stipulation was made. If so, Liming had reason to believe that it excluded his blood-alcohol level as an operative cause of the accident.
 {¶ 50} Liming contended that the court's probation officer had privately agreed to base his recommended sentence on the matter of the defective tire. We cannot know that he did. However, it is evident that the sole basis of the officer's recommended five year maximum sentence was Liming's blood-alcohol test results. If so, the officer broke his promise, casting a shadow on his recommendation. Whether he broke his promise can't be determined absent an evidentiary hearing.
 {¶ 51} Finally, the fact that his blood alcohol level was again fully in consideration was a matter of which Liming was unaware until only moments before the sentencing hearing. He might have been prepared to present evidence to rebut the implications that evidence presented. However, on this record he may just as well not have been prepared.
 {¶ 52} As we discussed above, the court was required to weigh the seriousness of Liming's conduct when it chose which sentence to impose out of an available range. Liming's blood-alcohol test results were relevant to that issue, as the probation officer's recommendation shows. Liming should have an opportunity to challenge their "factual inaccuracy." R.C. 2951.01(B)(2). If a reasonable continuance is required for that purpose, the court should grant one.
 {¶ 53} These considerations largely go to Liming's contention when his motion was made that he was sober and could call witnesses to prove it. At oral argument, he also argued that alcohol pads applied to his injuries may have produced the elevated blood alcohol level shown by the test result. Some allusion was made to that proposition at the hearing on the motion to suppress, but no evidence was offered to support it. We leave it to the trial court to decide whether to hear evidence on the matter.
 {¶ 54} The first assignment of error is sustained.
 Conclusion {¶ 55} Having sustained the first assignment of error and the third assignment of error, in part, we will reverse Defendant-Appellant's sentence and remand for resentencing. This decision has no effect on his conviction.
Brogan, J. and Young, J., concur.
[1] The text of the written report recommends four years. However, the probation officer indicated that was an error, and that his actual recommendation was five years. (T. 11).