OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Jammie Traylor, appeals the decision of the Youngstown Municipal Court finding him guilty of failing to restrain his vicious dogs in violation of Youngstown Codified Ordinance 505.19. With this appeal, Traylor challenges the constitutionality of the ordinance under which he was charged. Because the ordinance did not provide Traylor, or other dog owners, with a meaningful opportunity to challenge the labeling of the dogs as vicious, the decision of the trial court is reversed and Traylor's conviction is vacated.
 {¶ 2} On April 18, 2007, David Roch was walking his dog in the City of Youngstown when he was approached by two unaccompanied dogs that were later determined to be owned by Traylor. The dogs were initially playful. However, at some point the dogs attacked Roch and his dog. As a result, Traylor was charged with violating Y.C.O. 505.19. After entering a plea of not guilty, Traylor moved to dismiss the charge based on the unconstitutionality of the ordinance. The trial court denied the motion and the matter proceeded to a jury trial which resulted a conviction.
 {¶ 3} As his first of three assignments of error, Traylor states:
 {¶ 4} "Youngstown Codified Ordinance 505.19 is unconstitutional on its face and or as it applies in the case at bar."
 {¶ 5} Traylor challenges the municipal ordinance claiming that it violated his right to due process as it does not allow for a meaningful opportunity to challenge the labeling of one's dog as "vicious." This is significant in that the ordinance places obligations on the owners relating to the harboring and care of these dogs. Notably, the owners are not given notice or a hearing before these limitations take effect resulting in what Traylor claims is a due process violation. The ordinance in question, Y.C.O. 505.19, provides:
 {¶ 6} "(a) No person owning or harboring or having the care of a vicious dog shall suffer or permit such animal to go unconfined on the premises of such person.
 {¶ 7} (b) No person owning or harboring or having the care of a vicious dog shall suffer or permit such dog to go beyond the premises of such person unless such dog is securely leashed or otherwise securely restrained. *Page 2 
 {¶ 8} (c) Definitions.
 {¶ 9} A vicious dog is `unconfined' as the term is used in this section. If such dog is not restrained by a secure fence, other secure enclosure or any other security device which effectively prevents such dog from going beyond the premises of the person described in subsection (a) hereof.
 {¶ 10} `Vicious dog' as used in this section means:
 {¶ 11} (A) Any dog with a propensity, tendency or disposition to attack, to cause injury to or to otherwise endanger the safety of human beings or other domestic animals; and
 {¶ 12} (B) Any dog which attacks a human being or another domestic animal without provocation.
 {¶ 13} (d) Subsections (a) and (b) hereof are necessary controls on the unrestrained activity of vicious animals which threaten the safety and pleasantness of streets, parks, sidewalks, yards and all areas of the City and lack of knowledge or lack of intent is not a defense to a violation thereof."
 {¶ 14} Significantly, it appears that this Youngstown City Ordinance was modeled after R.C. 955.22 which states:
 {¶ 15} "(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following:
 {¶ 16} (1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained;
 {¶ 17} (2) While that dog is off the premises of the owner, keeper, or harborer, keep that dog on a chain-link leash or tether that is not more than six feet in length and additionally do at least one of the following:
 {¶ 18} (a) Keep that dog in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top; *Page 3 
 {¶ 19} (b) Have the leash or tether controlled by a person who is of suitable age and discretion or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person;
 {¶ 20} Muzzle that dog."
 {¶ 21} In State v. Cowan 103 Ohio St.3d 144, 814 N.E.2d 846,2004-Ohio-4777, a Portage County deputy dog warden determined two dogs to be vicious following a complaint that the dogs had attacked a woman. Id. at ¶ 1. The dogs were determined to be vicious under the first two subsections of R.C. 955.11(A)(4)(a) because they had caused injury to a person. The owner was then charged with failure to confine the dogs pursuant to 955.22(D)(1).
 {¶ 22} The Ohio Supreme Court concluded that "R.C. 955.22 violates the constitutional right to procedural due process insofar as it fails to provide dog owners with a meaningful opportunity to be heard on the issue of whether the dog is `vicious' or `dangerous' as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a)." Id. at syllabus.
 {¶ 23} The Court explained that R.C. 955.22 required owners of a dangerous or vicious dog to confine the dog in a certain manner and to obtain a certain amount of liability insurance. Id. at ¶ 10. Therefore, a determination that a dog was "dangerous or vicious" resulted in the imposition of additional legal duties and restrictions on the dog owner. The court in Cowan further noted that the dog warden, prior to citing the defendant for violating the vicious dog law, made a unilateral, unreviewable determination that the defendant's dogs were vicious. Id. at ¶ 13.
 {¶ 24} The facts in this case are virtually identical as Traylor was charged with failure to restrain his "vicious" dogs prior to being given any notice or hearing on the classification of his dogs and thus theCowan holding would be controlling in this case.
 {¶ 25} The State would argue, however, that the Cowan holding no longer applies, as the Court has recently released an opinion that the State would argue reaches the opposite conclusion. More specifically, inToledo v. Tellings. Ohio St.3d 278, 871 N.E.2d 1152, 2007-Ohio-3724, the Court concluded that R.C. 955.22 was not unconstitutional as *Page 4 
applied to owners of pit bulls. The Court explained:
 {¶ 26} "In Cowan, the dogs were determined to be vicious under the first two subsections of R.C. 955.11(A)(4)(a) because they had caused injury to a person. Thus, the case concerned the dog warden's unilateral classification of the dogs as vicious. However, in this case, the `vicious dogs' at issue are those classified as pit bulls under the third subsection of R.C. 955.11(A)(4)(a). Unlike the situation inCowan, the General Assembly has classified pit bulls generally as vicious; there is no concern about unilateral administrative decision-making on a case-by-case basis. The clear statutory language alerts all owners of pit bulls that failure to abide by the laws related to vicious dogs and pit bulls is a crime. Therefore, the laws do not violate the rights of pit bull owners to procedural due process." Id. at ¶ 32.
 {¶ 27} Given that this case does not appear to involve pit bulls, and because the ordinance does not contain a classification of this breed as a definition of "vicious" the State's assertion is incorrect and theTellings holding is wholly inapplicable to this case. Traylor's first assignment of error is with merit.
 {¶ 28} Traylor's remaining two assignments of error argue:
 {¶ 29} "Youngstown Codified Ordinance 505.19 is invalid as it violates R.C. 2901.21."
 {¶ 30} "The trial court erred by failing to give a jury instruction on recklessness."
 {¶ 31} We need not address these assignments of error as they are rendered moot by this court's resolution of Traylor's first assignment of error.
 {¶ 32} Accordingly, pursuant to Cowan, the judgment of the trial court is reversed, Traylor's conviction is vacated and Traylor is discharged.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1