CITY OF YOUNGSTOWN, APPELLANT, *v.* TRAYLOR, APPELLEE.

[Cite as *Youngstown v. Traylor,* 123 Ohio St.3d 132, 2009-Ohio-4184.]

*Criminal liability — Vicious dogs — Youngstown Codified Ordinances 505.19 is rationally related to the city's legitimate interest in protecting citizens from vicious dogs and therefore is constitutional — Conviction reinstated.*

(No. 2008-1460 — Submitted May 19, 2009 — Decided August 26, 2009.)

APPEAL from the Court of Appeals for Mahoning County, No. 07 MA 102, 2008-Ohio- 2971.

_____

SYLLABUS OF THE COURT

Youngstown Codified Ordinances 505.19 is rationally related to the city's legitimate interest in protecting citizens from vicious dogs and therefore is constitutional.

_____

LUNDBERG STRATTON, J.

{¶ 1}  Today we must decide whether a Youngstown ordinance that requires vicious dogs to be confined and requires the state to prove at trial that the dog is vicious or dangerous as an element of the offense violates procedural due process.  Because we hold that the ordinance does not violate due process, we reverse the judgment of the court of appeals and reinstate the conviction.

**Facts**

{¶ 2}  On April 18, 2007, at 8:00 a.m., David Roch was walking his 16-pound wire fox terrier in Mill Creek Park in Youngstown, Ohio, when he was approached by two unaccompanied Italian mastiff/Cane Corso dogs, one male and one female.  The Mahoning County dog warden estimated the male dog to be about 170 to 180 pounds, and the female was slightly smaller.

**{¶ 3}** Roch restrained his dog and attempted to calm the larger dogs, which were becoming increasingly agitated. One of the dogs attacked Roch's dog, and when Roch attempted to rescue his dog from the skirmish, Roch was attacked, sustaining an injury to his hand. Roch's dog required surgery and stitches for injuries to her ear and head.

**{¶ 4}** After the attack, Roch's dog, which had been taken off her leash, fled, and Roch sought shelter in the garage of Maureen Cronin, a neighbor who witnessed the attack. Cronin called Mill Creek Park Police Officer Carolyn Grimaldi, who arrived to find two dogs standing in Cronin's driveway. Officer Grimaldi shot and killed one of the dogs as it ran toward her. The other dog fled, and a few minutes later, Youngstown Police Officer Matthew Willis spotted it. Officer Willis testified that when the dog saw him, it looked agitated and aggressive. When the dog fast approached him, Officer Willis shot and killed it.

**{¶ 5}** After a joint investigation involving the Mill Creek Park Police Department, the Youngstown Police Department, and the Mahoning County dog warden's office, investigators learned that the owner of the dogs was Jammie Traylor, defendant-appellee. Traylor confirmed that he had two dogs that were missing, but when shown the remains of the dogs, he admitted owning only the female. Witnesses testified that they had seen Traylor with both dogs several weeks before the attack. Traylor admitted at his sentencing hearing that he owned the female and that the male had been present at his home for breeding purposes.

**{¶ 6}** Traylor was charged with two first-degree misdemeanors, violations under Youngstown Codified Ordinances ("YCO") 505.19(b), entitled "Vicious Dogs." Traylor filed a motion to dismiss, arguing that YCO 505.19 is unconstitutional. The trial court denied Traylor's motion. A jury ultimately convicted Traylor on the lesser included offense to count one and of the offense as charged in count two. The trial court sentenced Traylor to 90 days in jail and ordered him to pay restitution to Roch, complete two years of intensive

supervised probation upon his release, pay fines and costs, and own "nothing bigger than a Chihuahua" as a condition of his probation.

{¶ 7} The Mahoning County Court of Appeals vacated Traylor's convictions and discharged him, holding that YCO 505.19 was unconstitutional. *Youngstown v. Traylor,* Mahoning App. No. 07MA102, 2008-Ohio-2971, 2008 WL 2441368. The city appealed, and this court accepted jurisdiction. *Youngstown v. Traylor*, 120 Ohio St.3d 1415, 2008-Ohio-6166, 897 N.E.2d 651.

**Analysis**

{¶ 8} The issue before this court is whether YCO 505.19 violates procedural due process by failing to give notice to a dog owner that his dog will be considered vicious for purposes of criminal prosecution and/or by failing to allow the owner a meaningful opportunity to be heard on his dog's classification as vicious. The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6. "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113.

{¶ 9} Although dogs are "private property to a qualified extent, they are subject to the state police power, and 'might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. * * * [L]egislatures have broad police power to regulate all dogs so as to protect the public against the nuisance posed by a vicious dog.' " *State v. Anderson* (1991), 57 Ohio St.3d 168, 170, 566 N.E.2d 1224, quoting *Sentell v. New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, 701-704, 17 S.Ct. 693, 41 L.Ed.

1169. Thus, in this case, as in other animal-control cases, we are balancing the state's interest in protecting its citizens from vicious animals with the dog owner's due process rights.

{¶ 10} The text of the ordinance at issue is as follows:

{¶ 11} "YCO 505.19 Vicious Dogs.

{¶ 12} "(a)    No person owning or harboring or having the care of a vicious dog shall suffer or permit such animal to go unconfined on the premises of such person.

{¶ 13} "(b) No person owning or harboring or having the care of a vicious dog shall suffer or permit such dog to go beyond the premises of such person unless such dog is securely leashed or otherwise securely restrained.

{¶ 14} "(c) Definitions.

{¶ 15} "(1) A vicious dog is 'unconfined' as the term is used in this section, if such dog is not restrained by a secure fence, other secure enclosure or any other security device which effectively prevents such dog from going beyond the premises of the person described in subsection (a) hereof.

{¶ 16} "(2) 'Vicious dog' as used in this section means:

{¶ 17} "A.    Any dog with a propensity, tendency or disposition to attack, to cause injury to or to otherwise endanger the safety of human beings or other domestic animals; and

{¶ 18} "B.    Any dog which attacks a human being or another domestic animal without provocation.

{¶ 19} "(d)    Subsections (a) and (b) hereof are necessary controls on the unrestrained activity of vicious animals which threaten the safety and pleasantness of streets, parks, sidewalks, yards and all areas of the City and lack of knowledge or lack of intent is not a defense to a violation thereof."

{¶ 20} In examining the constitutionality of this ordinance, we look to two recent vicious-dog cases. In *Cowan,* 103 Ohio St.3d 144, 2004-Ohio-4777, 814

4

N.E.2d 846, this court examined whether R.C. 955.22, a state statute requiring confinement of dangerous or vicious dogs, violated procedural due process. We held that the statute was unconstitutional because it failed to provide the dog owner with a meaningful opportunity to be heard on the dog's classification and labeled dogs dangerous or vicious because of their breed only. Id. at ¶ 13. Once the dog warden had made the unilateral decision to classify Cowan's dogs as vicious, R.C. 955.22 placed restrictions and requirements on Cowan and her dogs, such as purchasing liability insurance, without the right to an appeal or an administrative hearing. Id.

{¶ 21} Traylor relied on *Cowan* to support his position that YCO 505.19 is unconstitutional. However, as the trial court held, Traylor was charged under the vicious-dog ordinance *not* because of the breed of his dogs, but rather, because his dogs had allegedly attacked a human and/or another domestic animal without provocation, as prohibited by YCO 505.19(c)(2)B. Here, the trial court concluded that there was no presumption that the dogs were vicious; rather, their viciousness was an element of the crime that the state had the burden of proving — i.e., that the dogs had attacked a human being or another domestic animal without provocation. Thus, the trial court found that the facts in this case separated it from the analysis in *Cowan*.

{¶ 22} Between the trial court's ruling and the court of appeals' decision in this case, we decided *Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, in which we considered a Toledo Municipal Code section as well as two state statutes, R.C. 955.11 and 955.22. The municipal code section limited ownership of vicious dogs, as defined in R.C. 955.11, or dogs commonly known as pit bulls or pit bull mixed breeds, to one in each household, and the Revised Code required an owner of a pit bull to obtain liability insurance for damages, injuries, or death that might be caused by the dog. Id. at ¶ 2.

**{¶ 23}** In upholding the three provisions, this court concluded that the state and the city of Toledo possess the constitutional authority to exercise police powers that are rationally related to a legitimate interest in public health, safety, morals, or general welfare. We determined that the evidence proved that pit bulls cause more damage than other dogs when they attack, cause more fatalities in Ohio than other dogs, and cause Toledo police officers to fire their weapons more often than do other breeds. Thus, we held that the state of Ohio and the city of Toledo had a legitimate interest in protecting citizens from the dangers associated with pit bulls and that R.C. 955.11(A)(4)(a)(iii) and 955.22 and Toledo Municipal Code 505.14 are rationally related to that interest. Therefore, these provisions are constitutional. Id. at ¶ 35.

**{¶ 24}** The court of appeals held that *Tellings* was inapplicable to this case because the case at bar does not involve pit bulls and because YCO 505.19 does not contain a classification of this breed as a definition of "vicious." *Youngstown v. Traylor*, 2008-Ohio-2971, ¶ 27. Rather, the court of appeals found the facts of *Cowan* to be "virtually identical" to those in this case. Id. at ¶ 14. Thus, the court of appeals held that YCO 505.19 violated procedural due process because of the "imposition of additional legal duties and restrictions on the dog owner." Id. at ¶ 23. We disagree.

**{¶ 25}** In holding that R.C. 955.22 was not unconstitutional as applied to owners of pit bulls in *Tellings*, we clarified that in *Cowan*, it was the unilateral classification of the dogs as vicious by a state actor that trampled the defendant's due process rights by failing to give him notice and opportunity to be heard. *Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, ¶ 32. YCO 505.19 simply shifts the risk of dog ownership to the dog owner in order to protect the public. [1]

---

1. Between 4.5 and 4.7 million people are bitten by dogs in the United States each year. American Veterinary Medical Association ("AVMA"), Dog Bite Prevention,

**{¶ 26}** As for the opportunity to be heard, YCO 505.19 does not permit any unilateral, unreviewable, precharge determination by a state actor, unlike the statute involved in *Cowan*. Moreover, YCO 505.19 does not create prehearing burdens on dog owners, such as requiring liability insurance for particular breeds. In *Cowan,* we rejected the statute's failure to provide the owner an opportunity to challenge the vicious label before trial. However, YCO 505.19 does not classify or label dogs as vicious. Dogs are rendered vicious under the ordinance by their propensity to attack or by their attack, and dog owners are merely required to keep such dogs confined.

**{¶ 27}** Traylor's dogs were alleged to be vicious in his criminal complaint, and Traylor was given an opportunity for meaningful review in front of the trial court. Notably, Traylor did not present any evidence regarding the temperament or disposition of his unlicensed dogs at the hearing on the motion to dismiss. YCO 505.19 does not place any responsibilities on the dog owner until the state proves its case beyond a reasonable doubt. Rather, YCO 505.19 simply requires dog owners to keep their dogs on their property.

**{¶ 28}** The Tenth District Court of Appeals considered a similar case in which a German shepherd had attacked a dog on a leash, and the owner was charged under a local ordinance. *State v. Conte* (Nov. 6, 2007), 10th Dist. No. 07AP-33, 2007-Ohio-5924. The court made two observations that are applicable in this case: first, the city ordinance in *Conte* did not involve an "unreviewable, unilateral determination that the animal was 'vicious or dangerous.' Rather, [the state] must prove at trial that appellee's dog is vicious or dangerous as an element of the offense. [The owner] has the opportunity to contest that allegation." Id. at

---

http://www.avma.org/public_health/dogbite/; Centers for Disease Control and Prevention, Dog Bite Prevention, www.cdc.gov/HomeandRecreationalSafety/Dog-Bites/biteprevention.html. According to the AVMA, almost 900,000 people require medical attention for dog-bite-related injuries each year.

¶ 15.  Second, the city ordinance "does not impose any additional obligations on a dog owner."  Id. at ¶ 17.

## Conclusion

**{¶ 29}** Traylor's dogs, unprovoked, attacked Roch and his dog while the dogs were off their property.  Traylor argues that an owner cannot know that his dog is vicious until he is convicted under the ordinance.  To hold otherwise, however, would be to permit each dog "one free bite," a result that would clearly leave society at risk.  A responsibility of dog ownership is to maintain and control the animal.  This ordinance requires no more and no less, and, therefore, it does not violate procedural due process.

**{¶ 30}** We hold that Youngstown Codified Ordinances 505.19 is rationally related to the city's legitimate interest in protecting citizens from vicious dogs and therefore is constitutional.  Accordingly, we reverse the judgment of the court of appeals and reinstate the convictions.

Judgment reversed.

MOYER, C.J., and O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER and LANZINGER, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 31}** In *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, at syllabus, we stated that R.C. 955.22, the statute addressing "vicious" dogs, "violates the constitutional right to procedural due process insofar as it fails to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is 'vicious.' "  This conclusion answers the issue before us.  Traylor was charged with not restraining a "vicious" dog, but he had no notice that his dog was "vicious."  In *Cowan*, the dog owner was aware that her dogs had been labeled vicious; she had *merely* not been given an opportunity to challenge that determination.  Id. at ¶ 15.  This case is even more egregious because Traylor

not only doesn't have an opportunity to challenge the "vicious" label, he had no way to know that his dog is "vicious."

{¶ 32} The outcome of this case is morally repugnant. The owner of a dog is being sent to jail for 90 days based on his failure to do something he could not know he was supposed to do. "Vicious" dogs must be restrained. Youngstown Codified Ordinances ("YCO") 505.19. But Traylor's dog was not "vicious" until the moment it bit a human, at which point it was too late for Traylor to restrain his dog. YCO 505.19 imposes obligations on dog owners that they do not know they need to comply with until they have no opportunity to comply. The most troubling part of this case isn't that a municipality would pass such an ordinance; it's that this court is sanctioning it. See *State v. Price*, 118 Ohio St.3d 144, 2008-Ohio-1974, 886 N.E.2d 852, at ¶ 38 ("[defendant] is owed what every criminal defendant is owed: notice that his conduct is illegal").

{¶ 33} This court is turning a blind eye to basic tenets of fundamental fairness. See R.C. 2901.21(A)(1) (a "person's [criminal] liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing"). Traylor was not capable of restraining his "vicious" dog until he knew it was vicious. Allowing Youngstown to impose criminal liability based on a contemporaneous labeling of a dog as "vicious" is not different from imposing criminal liability on an "accident-prone" driver and defining "accident-prone" as anyone who gets in a car accident. It just doesn't make sense. And it's unconstitutional. See *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110, quoting *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (an ordinance violates due process when it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute' ").

{¶ 34} Furthermore, Youngstown should not be able to define what constitutes a "vicious" dog because the General Assembly has already done so.

R.C. 955.11(A)(4)(a). The parties did not address this issue, and the record is not fully developed, so it is difficult to determine whether YCO 505.19 would survive a home-rule analysis. See *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 24. Based on what the record does reveal, it seems likely that YCO 505.19 would not survive. YCO 505.19 is an exercise of local self-government. Id. at ¶ 23. But, R.C. Chapter 955 appears to be a general law, and R.C. 955.11(A)(4)(a) and YCO 505.19(c)(2) are clearly in conflict. See *Clyde* at ¶ 25. Pursuant to this, admittedly cursory, analysis, R.C. 955.11(A)(4)(a) would prevail over YCO 505.19(c)(2).

{¶ 35} This court did not engage in a home-rule analysis, in large part because the parties did not argue the issue. By avoiding that issue, however, this court is sanctioning the imposition of criminal liability for something that the General Assembly has determined is not a crime. According to R.C. 955.22, the owner of a dog cannot be criminally liable for acts of that dog unless the dog has already been determined to be "vicious." Unlike YCO 505.19, R.C. 955.22 and related statutes do not allow a dog to be labeled vicious and its owner to be criminally liable based on the same act.

{¶ 36} YCO 505.19 violates the Constitution by not providing fundamental due process protections. I would affirm the judgment of the court of appeals. I dissent.

LANZINGER, J., concurs in the foregoing opinion.

_____

**LANZINGER, J., dissenting.**

{¶ 37} I join Justice Pfeifer's dissent. With respect to the majority's concern over "one free bite," a dog owner cannot totally evade responsibility for the consequences of failure to restrain a dog—there is always the potential for civil liability. We held in *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, syllabus, that a statute requiring the confinement of vicious dogs

violates the constitutional right to procedural due process if it fails to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is vicious. I would affirm the judgment of the court of appeals that the reasoning in *Cowan* controls the outcome of this case.

_____

Joseph R. Macejko, Youngstown Prosecuting Attorney, for appellant.

James E. Lanzo, for appellee.

_____