[Cite as *State v. Warwick*, 2018-Ohio-139.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2017-01-001 |
| | : | O P I N I O N |
| - vs - | | 1/16/2018 |
| | : | |
| CHRISTY LYNN WARWICK, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 16-CR-12010


Martin P. Votel, Preble County Court of Common Pleas, Valerie Sargent-Wood, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Muenchenbach Law Office, LLC, Brian A. Muenchenbach, 309 North Barron Street, Eaton, Ohio 45320, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Christy Lynn Warwick, appeals from the sentence she received in the Preble County Court of Common Pleas following her guilty plea to endangering children and involuntary manslaughter.  For the reasons set forth below, we affirm her sentence.

{¶ 2}  In May 2016, appellant was arrested and indicted on one count of endangering

children in violation of R.C. 2919.22(A), a felony of the third degree, and one count of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree. The charges arose out of the death of appellant's infant son, Sylas, who was 21 months old at the time of his death on December 14, 2015.

{¶ 3} Sylas was born drug dependent in February 2014, as a result of appellant's ongoing drug abuse. At the time of his birth, Sylas was removed from appellant's care by Children Services and placed in a foster home. In May 2015, Sylas was returned to appellant's care, and in September 2015, Children Services closed its case involving Sylas and appellant. Less than three months later, on December 13, 2015, Sylas was transported by an ambulance to a Preble County emergency room after appellant called 9-1-1 upon finding Sylas unresponsive in her home. Sylas was then careflighted to Dayton Children's Hospital, where he was determined to be nonresponsive and in a vegetative state. He was malnourished, had significant head trauma, and his body was covered with bruises and burn marks. Sylas died shortly after being admitted to Dayton Children's Hospital.

{¶ 4} On October 24, 2016, appellant pled guilty as charged to child endangering and involuntary manslaughter. The trial court accepted appellant's plea, set the matter for sentencing, and ordered that a presentence investigation report ("PSI") be prepared.

{¶ 5} Appellant appeared for sentencing on November 30, 2016. To provide some context for the court as to the nature and severity of appellant's crimes, the state called Dr. Lori Vavul-Roediger, the medical director for the Department of Child Advocacy at Dayton Children's Hospital. Dr. Vavul-Roediger had performed a medical evaluation on Sylas on December 13, 2015, and rendered an expert opinion as to the cause and nature of Sylas' injuries. Dr. Vavul-Roediger wrote a report detailing her findings, and this report was provided to the trial court.

{¶ 6} Dr. Vavul-Roediger testified that Sylas arrived at the hospital malnourished and

- 2 -

weighing only 9.8 kilograms, or 21.6 pounds. Sylas had extensive injuries to his mouth, as he was missing a central incisor, his upper gum line was open and had a clot of blood, and his lower lip and gum line were injured and oozing blood. Dr. Vavul-Roediger opined that the oral injuries were caused by a "very violent, forceful, blunt trauma to the child's oral cavity." Sylas also had significant head trauma, including an acute subdural hemorrhage and extensive cerebral swelling, which Dr. Vavul-Roediger opined resulted from multiple blows to his head. Dr. Vavul-Roediger also observed bruising to Sylas' ears, forehead, jaw, chin, back, legs, and arms, as well as healing or healed burn marks to Sylas' back and his scrotum. Skeletal x-rays showed healing and acute fractures to Sylas' jaw, collarbone, and ribs and compressive injuries to his spinal column.

{¶ 7} Dr. Vavul-Roediger spoke with appellant after examining Sylas. Appellant told Dr. Vavul-Roediger that Sylas had not seen a doctor since April 2015. Appellant informed Dr. Vavul-Roediger that Sylas had harmed himself by banging his head on various objects. Appellant also commented that Sylas had become thinner recently, but appellant attributed this to Sylas growing taller. Appellant stated Sylas ate all the time and had to be stopped from over eating as he would eat until he vomited.

{¶ 8} Appellant informed Dr. Vavul-Roediger that she made three videos of Sylas on her cellphone on December 6, 2015 to show the injuries Sylas had inflicted on himself. These videos were played at the sentencing hearing. After viewing the videos, Dr. Vavul-Roediger testified that Sylas "appear[ed] malnourished * * * appear[ed] to be clearly acutely distressed * * * [and] clearly non-responsive to the adult who [was] taping and continue[d] to tape while he [stood], essentially, motionless and crie[d]." Dr. Vavul-Roediger stated Sylas' injuries were "extremely" and "exorbitantly" uncommon of injuries sustained from self-induced "head-banging." Rather, given the severity and type of injuries Sylas experienced, Dr. Vavul-Roediger opined that Sylas was "unfortunately, physically abused and died as a result of the

physical maltreatment he sustained."

{¶ 9} In addition to Dr. Vavul-Roediger's testimony, and the three December 6, 2015 videos taken from appellant's phone, the state also introduced a video of Sylas that was taken by his former foster parents. The video depicted a healthy 11-month-old Sylas. Following the presentation of this video, the state asked the trial court to impose maximum, consecutive sentences on appellant.

{¶ 10} Appellant declined the opportunity to speak at sentencing, but defense counsel spoke on her behalf. Defense counsel noted appellant had substance abuse issues and had been diagnosed with post-traumatic stress disorder and an adjustment disorder with depressive mood. Defense counsel stated that although appellant denied intentionally harming Sylas, she took responsibility for her recklessness in caring for her son and was "deeply remorseful" that she did not provide or seek better care for Sylas.

{¶ 11} After considering the information presented at the sentencing hearing, sentencing memoranda prepared by the parties, a letter submitted by appellant's daughter, and the PSI, the trial court determined that the presumption of a prison term had not been overcome. The court sentenced appellant to a nine-year prison term on the involuntary manslaughter charge, which was run concurrently to a three-year prison term on the endangering children charge.

{¶ 12} Appellant appealed her sentence, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} DEFENDANT-APPELLANT WAS DENIED HER DUE PROCESS RIGHTS AND THE TRIAL COURT VIOLATED THE MANDATORY REQUIREMENT OF R.C. 2951.03 WHEN IT SENTENCED DEFENDANT-APPELLANT WITHOUT PROVIDING HER OR HER COUNSEL ANY ACCESS TO THE PRESENTENCE REPORT.

{¶ 15} In her first assignment of error, appellant argues she was denied due process

and her rights under R.C. 2951.03 were violated when the trial court sentenced her without providing her with a copy of the PSI.

{¶ 16} "A PSI report serves to inform the sentencing judge of relevant aspects of the defendant's history, so that the court will sentence the defendant in an informed, responsible, and fair manner." *State v. Posey*, 6th Dist. Ottawa No. OT-10-044, 2012-Ohio-1108, ¶ 4, citing *State v. Liming*, 2d Dist. Greene No. 03CA43, 2004-Ohio-168, ¶ 41. The PSI report and its contents are governed by Crim.R. 32.2 and R.C. 2951.03.

{¶ 17} Crim.R. 32.2 provides that in felony cases "[u]nless the defendant and the prosecutor * * * agree to waive the presentence investigation report, the court shall * * * order a presentence investigation and report before imposing community control sanctions or granting probation."

{¶ 18} R.C. 2951.03(B)(1) provides that if a PSI is prepared, "the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report." However, neither the defendant nor defense counsel are permitted to read any recommendation as to the sentence, any diagnostic opinions that the court believes might seriously disrupt a program of rehabilitation for the defendant, any sources of information obtained upon a promise of confidentiality, or any other information that if disclosed might result in harm, physical or otherwise, to the defendant or any other person. R.C. 2951.03(B)(1)(a)-(d). If a PSI report is prepared and its contents shared with the defendant or defense counsel, then, "[p]rior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the [PSI] and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." R.C. 2951.03(B)(2). If the trial court believes that any of the information contained in the PSI should not be disclosed in accordance with R.C. 2951.03(B)(1)(a)-(d), the court, "in lieu of making the

- 5 -

report or any part of the report available, shall state orally or in writing a summary of the factual information contained in the report that will be relied upon in determining the defendant's sentence." R.C. 2951.03(B)(3). The court must then give the defendant or the defendant's counsel the opportunity to comment upon the oral or written summary. *Id.*

{¶ 19} Appellant contends that although a PSI report was prepared and utilized by the trial court at sentencing, it was not shared with her or her defense counsel. In support of her argument that the failure to provide her or her counsel with the PSI constitutes reversible error, appellant cites to *Liming*, 2004-Ohio-168; and *Posey*, 2012-Ohio-1108.

{¶ 20} In *Liming*, the defendant pled guilty to aggravated vehicular homicide. *Liming* at ¶ 7. The defendant and his counsel were provided with access to the PSI shortly before the sentencing hearing. *Id.* at ¶ 8. The PSI contained information that the defendant had tested above the legal limit for alcohol shortly after he wrecked his motor vehicle. *Id.* at ¶ 6, 10. The defendant asked for a continuance of his sentencing hearing in order to present evidence rebutting the test results indicating an elevated blood alcohol level. *Id.* at ¶ 13. The trial court denied the defendant's request for a continuance and proceeded to sentence him to a five-year prison term. *Id.* at ¶ 14, 17. On appeal, the Second District Court of Appeals found that the trial court abused its discretion in denying the continuance as the defendant was denied the opportunity to present evidence regarding factual inaccuracies in the PSI in accordance with R.C. 2951.03(B)(2). *Id.* at ¶ 52. That is, the defendant was not given the chance to present witnesses or evidence that he was sober at the time of the accident and that the alcohol pads applied to his injuries were responsible for his elevated blood alcohol level. *Id.* at ¶ 53.

{¶ 21} In *Posey*, after the defendant pled no contest to two counts of assault, the trial court requested that a PSI report be prepared. *Posey*, 2012-Ohio-1108, ¶ 2. In accordance with the trial court's "standard procedure" of denying all defendants and defense attorneys

access to a PSI report, neither the defendant nor the defendant's counsel were permitted to view the PSI prior to sentencing. *Id.* at ¶ 2, 6-7. On appeal, the Sixth District Court of Appeals concluded that the trial court erred as the court's "'standard' procedure of automatically denying all defendants and defense attorneys access to a PSI report does not comply with the statutory due process and requirements provided by R.C. 2951.03(B)(3)." *Id.* at ¶ 7.

{¶ 22} The present case is distinguishable from *Liming* and *Posey*. Unlike in *Liming* and *Posey*, there is nothing in the record demonstrating that appellant or her defense counsel were denied access to the PSI. Neither appellant nor defense counsel objected at the sentencing hearing to not receiving the opportunity to review the PSI; nor did appellant or defense counsel ask for a continuance or recess to review the PSI. Further, there is nothing in the record indicating the trial court had a "standard procedure" of not providing criminal defendants or their attorneys with access to the PSI. Rather, the record reflects the trial court ordered that a PSI be prepared, it was prepared, and the court referenced the PSI at the sentencing hearing without any objection or comment from appellant or appellant's counsel.

{¶ 23} Accordingly, as there is nothing in the record to suggest that the trial court failed to provide appellant or defense counsel with access to the PSI or the factual information contained therein, we find no merit to appellant's arguments that she was denied due process or that her rights under R.C. 2951.03 were violated. *See, e.g., State v. Richardson*, 2d Dist. Montgomery No. 23879, 2013-Ohio-1374, ¶ 16-17 (finding no merit to defendant's argument that his rights under R.C. 2951.03 were violated by the trial court's alleged failure to give him the opportunity to rebut information contained in the PSI where neither the defendant nor his counsel objected to the court's recitation of the PSI and there was "nothing in the record to suggest the court 'refused' [the defendant] the opportunity to rebut any

purported inaccuracies contained therein").

{¶ 24} Appellant's first assignment of error is, therefore, overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} DEFENDANT-APPELLANT WAS DENIED HER DUE PROCESS RIGHTS AS A RESULT OF PROSECUTORIAL MISCONDUCT.

{¶ 27} In her second assignment of error, appellant argues she was denied due process when the prosecutor had an improper ex parte communication with the sentencing judge. Specifically, appellant contends the prosecutor provided the judge with a "letter" for purposes of sentencing without also providing a copy of the letter to defense counsel. She further argues the prosecutor acted improperly and denied her of her due process rights when he failed to give her notice of his intent to present video evidence and testimony from Dr. Vavul-Roediger at sentencing.

{¶ 28} The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *Youngstown v. Traylor*, 123 Ohio St.3d 132, 2009-Ohio-4184, ¶ 8. "At a minimum, due process requires notice and the opportunity to be heard." *State v. Koller*, 12th Dist. Warren No. CA2013-07-069, 2014-Ohio-450, ¶ 25. "'A hearing before judgment, with full opportunity to present all evidence and arguments which the party deems important, is * * * vital under the guaranty of due process of law.'" *Id.*, quoting *Reed v. Morgan*, 12th Dist. Butler No. CA2011-03-065, 2012-Ohio-2022, ¶ 11.

**Ex Parte "Letter"**

{¶ 29} Appellant contends "the prosecutor submitted a letter to the court for consideration in sentencing without disclosing the letter to defense counsel" and references the following statement by the court at sentencing in support of her claim that an ex parte communication took place:

- 8 -

THE COURT: When I look at the pre-sentence report, the State's memorandum that was submitted yesterday, the attachments to it, the Defendant's memorandum submitted, I believe, yesterday also, and the attachments to it, and I think a letter that was given to the court today from, I believe, the Defendant's daughter who says the Defendant was a great mother and would never harm her child.

**{¶ 30}** "[L]etters from interested parties attempting to persuade the judge to their viewpoint or to bring some information to the judge's attention constitute improper ex parte communications." *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, ¶ 20 (10th Dist.). However, the only "letter" mentioned by the trial court at sentencing is a letter that was submitted by appellant's daughter – not by the prosecutor, and no "letter" authored by the state was included in the record on appeal. Furthermore, although appellant purports to have knowledge of an ex parte "letter" allegedly being provided to the trial court by the prosecutor, the record demonstrates appellant did not object at the sentencing hearing to the supposed ex parte communication. "A failure to object to alleged prosecutorial misconduct waives all but plain error." *State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 13. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and but for the error, the outcome of the proceeding would have been different. *State v. Yanez*, 12th Dist. Butler No. CA2016-10-190, 2017-Ohio-7209, ¶ 23.

**{¶ 31}** If an ex parte communication has occurred, "the complaining party must still show some prejudicial impact from the ex parte communication." *Sanders* at ¶ 21, citing *State v. Lyons*, 11th Dist. Ashtabula No. 2001-A-0056, 2003-Ohio-3494, ¶ 28, reversed on other grounds in *State v. Lyons*, 101 Ohio St.3d 94, 2004-Ohio-27. Here, appellant claims she was prejudicially impacted by the "letter" as it "adversely influenced the trial judge without giving defense counsel or [appellant] an opportunity to be heard in response." We find no

merit to appellant's argument as there is no evidence in the record that the trial court relied on the supposed ex parte "letter" in imposing appellant's sentence. The PSI and the testimony and information presented at the sentencing hearing supports the trial court's decision. Appellant cannot demonstrate prejudice as the trial court imposed a concurrent nine-year prison term and not maximum, consecutive prison terms totaling an aggregate of 14 years as the state requested at sentencing and, presumably, would have requested in the ex parte "letter."

{¶ 32} Furthermore, appellant had an opportunity to be heard with respect to sentencing. Not only did appellant's counsel file a sentencing memorandum, but defense counsel was given the opportunity to present mitigation, rebut the information presented by the state at the sentencing hearing, and present an argument as to why the court should have imposed a community control sanction rather than a prison term. As appellant was not denied due process and has not established a prejudicial impact from the prosecutor's alleged ex parte communication, she has not demonstrated plain error and her arguments are without merit.

**Video Evidence and Testimony at Sentencing**

{¶ 33} Appellant also argues the prosecutor engaged in misconduct when he failed to give her counsel notice that the state intended to present video evidence and testimony from Dr. Vavul-Roediger at sentencing. Appellant contends that had the prosecutor given such notice, defense counsel would have had "more time to appropriately prepare potential cross-examination and/or rebuttal witnesses."

{¶ 34} The record demonstrates that after Dr. Vavul-Roediger was called as a witness and began to testify about Sylas' physical appearance upon his arrival at the hospital, defense counsel objected to the prosecutor's "line of questioning * * * [as] superfluous and

unnecessary."[1] The objection was overruled. At no point did appellant or defense counsel object to the prosecutor's use of the four videos or the presentation of Dr. Vavul-Roediger's testimony on the basis of surprise or lack of notice. As a result, appellant has waived all but plain error on review. *Lamb*, 2003-Ohio-3870 at ¶ 13.

**{¶ 35}** R.C. 2929.19(A) provides, in relevant part, that at a sentencing hearing, "the offender, the prosecuting attorney, the victim or the victim's representative * * * and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." Dr. Vavul-Roediger's testimony and the videos of Sylas taken from appellant's cell phone and from Sylas' former foster family were relevant to showing Sylas' physical health while in Mother's care and at the time of his death. Furthermore, the record demonstrates that the state identified Dr. Vavul-Roediger as an expert during discovery and her report, as well as Sylas' records from Dayton Children's Hospital, were provided to defense counsel in May 2016. Moreover, the videos introduced by the state at the sentencing hearing were also identified and provided to defense counsel during discovery.

---

1. Defense counsel objected as follows:

> [PROSECUTOR]: And with respect to the hair that you noted, what is the importance of the hair? What condition was the hair in and what does that suggest to you in terms of his nourishment?

> [DEFENSE COUNSEL]: Your Honor, I'm going to object to the line of questioning here. We're not – this isn't a trial. This is a sentencing. She's admitted to the guilt. Interactions at this point I think the questioning is superfluous and unnecessary.

> [PROSECUTOR]: The Rules of Evidence don't apply and this court is being asked to impose a fair and just sentence based upon this Defendant's crimes. She has been charged with Child Endangering, which includes the general manner in which she cared for this child up to and including any abuse she effected on the child or permitted.

> And his physical condition on the date in question is central in the State's judgment to the court's ability to evaluate the severity of her conduct.

> THE COURT: And I agree. I have no context because there was a plea. There was no trial. There was no presentation of evidence. So the court will grant some leeway with respect to the State's attempt to present evidence to put this in context.

As defense counsel was provided with all this information more than six months before the sentencing hearing was held, appellant cannot claim she or her counsel were not given notice or were surprised by the materials used at sentencing.[2]

{¶ 36} Moreover, appellant and her counsel were given some notice by the prosecutor of the state's intent to introduce Dr. Vavul-Roediger's testimony at sentencing. When appellant moved to continue her sentencing hearing from November 30, 2016 to a later date, the prosecutor filed a memorandum in opposition. The prosecutor indicated he had previously sought to have appellant sentenced on November 30, 2016 "to accommodate professional witness testimony, given the witness' limited unavailability [sic]. This date/time was scheduled nearly one month ago and a subpoena issued accordingly." The court's docket indicates that on November 1, 2016, the state subpoenaed Dr. Vavul-Roediger to appear at appellant's sentencing hearing.

{¶ 37} As the prosecutor subpoenaed Dr. Vavul-Roediger, thereby giving some notice of his intent to present her testimony at the sentencing hearing, and provided all the materials introduced at the sentencing hearing to defense counsel during discovery, we find no impropriety in the prosecutor's conduct. Appellant's prosecutorial misconduct claim fails as she cannot establish that she was prejudiced by the prosecutor's presentation of the videos or Dr. Vavul-Roediger's testimony. Additionally, appellant's claim that her due process rights were violated also fails as she was given advance notice of the materials used at sentencing, her defense counsel had the opportunity to cross-examine Dr. Vavul-Roediger, and she was permitted to present mitigation, information, and argument at the sentencing hearing as to the severity of her conduct and the type and duration of sentence she believed was

---

2. We further note that the introduction of the videos and Dr. Vavul-Roediger's testimony was permissible and not in violation of any evidentiary rules, as Evid.R. 101(C) "clearly identifies sentencing hearings as among those certain criminal proceedings in which the rules of evidence, including the hearsay rule, do not apply." *State v. Bene*, 12th Dist. Clermont No. CA2005-09-090, 2006-Ohio-3628, ¶ 21.

appropriate for her crimes.  Appellant's arguments are, therefore, without merit and her second assignment of error is overruled.

{¶ 38} Judgment affirmed.


S. POWELL and M. POWELL, JJ., concur.