IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 72667-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JANET NORMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 16, 2016 |
| | ) | |

BECKER, J. — A dog bit his owner's neighbor. The dog's owner was convicted of owning a dangerous animal in violation of the Seattle Municipal Code, a crime for which death of the animal is a mandatory sentence. The dog owner appeals. We conclude that the animal control officer's testimony constituted improper opinion evidence on whether the dog bite was unprovoked. For this reason, we reverse.

## FACTS

Appellant Janet Norman, a 79-year-old Seattle resident, owns a German Shepherd dog named Duncan. Melania Grant, approximately 30 years old, lived across the street from Norman on September 22, 2012. That day, Grant approached the front door of Norman's house, wanting to borrow tools to fix her car. When Norman opened her front door, Duncan shot past her and bit Grant's arm. Grant's mother immediately drove her to the hospital, where the doctors

mended the wound with approximately 50 stitches. The record contains no evidence that Duncan had ever bit anyone before this incident occurred. Animal Control Officer James Jackson investigated the incident and concluded the attack was unprovoked. Later, a different animal control officer went to Norman's home twice and told her she might face a criminal charge unless she removed the dog from within the city limits. Norman decided to keep Duncan with her in Seattle. As a result, the city decided to bring a criminal charge.

Norman was charged with the crime of owning a dangerous animal in violation of Seattle Municipal Code 9.25.083(A). If an animal owner is found guilty of this offense, the animal "shall" be euthanized. SMC 9.25.083(C).

Norman's trial occurred in Seattle Municipal Court in January 2014. Grant was not present at trial. Norman did not testify. No one who testified at trial had seen Duncan attack Grant. A jury found Norman guilty of owning a dangerous animal. The court ordered Norman to surrender Duncan, and he is currently detained at a kennel pending the outcome of these proceedings.

Norman appealed her conviction to superior court, and the court upheld the conviction. Norman then obtained a grant of review from this court.

INTERPRETATION OF THE SEATTLE MUNICIPAL CODE

Seattle's municipal code contains an administrative process by which an authorized city representative may declare an animal dangerous. SMC 9.25.035-36. The administrative process contains various procedural safeguards, such as written notice, an opportunity to respond at a meeting, a written decision, and an appeal. The same chapter of the code also defines the crime of owning a

dangerous animal. SMC 9.25.083. Norman contends that the ordinance requires the city to declare her dog dangerous in accordance with the administrative process of SMC 9.25.035 before it can charge her with owning a dangerous animal under SMC 9.25.083.

Our paramount duty in construing this ordinance is to ascertain and give effect to the intent of the city council. See, e.g., Higgins v. King County, 89 Wn. App. 335, 948 P.2d 879 (1997). We are to interpret each section of a statute in connection with every other section in order to harmonize the statute as a whole. Belleau Woods II, LLC v. City of Bellingham, 150 Wn. App. 228, 242-43, 208 P.3d 5, review denied, 167 Wn.2d 1014 (2009).

An animal owner may be convicted of owning a dangerous animal under either prong A or B of SMC 9.25.083:

    A. It is unlawful to own a dangerous animal (other than a licensed guard or attack dog) with knowledge that the animal is dangerous, or with reckless disregard of the fact that the animal is dangerous.

    B. It is unlawful to possess within the City of Seattle any animal that has been ordered removed from the City of Seattle pursuant to SMC 9.25.035.

For the purposes of the charge against Norman, "dangerous animal" was defined for the jury as any animal that "when unprovoked, inflicts severe injury on or kills a human being or domestic animal on public or private property." SMC 9.25.020(G)(1).

Norman was charged and convicted under prong A. The plain language of prong A does not require that the animal was previously declared dangerous under the administrative process at SMC 9.25.035. In contrast, the plain

language of prong B requires that the animal was previously ordered removed from Seattle pursuant to SMC 9.25.035. Under that section, removal can be ordered only after the animal has been declared dangerous in an administrative process. SMC 9.25.035(A). In other words, a conviction for owning a dangerous animal under prong B by definition requires a prior administrative declaration that the animal is dangerous. The contrast between prongs A and B demonstrates that the Seattle City Council knew how to make an administrative determination of dangerousness a prerequisite for convicting a person of owning a dangerous animal. The fact that the city council did not include such a prerequisite in the plain language of prong A shows that they did not intend such a requirement.

Interpreting the Seattle ordinance in another case, the Washington Supreme Court recognized that a finding of viciousness (now called dangerousness) under the city code may be made by the director administratively pursuant to SMC 9.25.035 *or* necessarily made by the jury in finding him guilty of owning a vicious animal. Rabon v. City of Seattle, 135 Wn.2d 278, 295, 957 P.2d 621 (1998). The court's interpretation confirms the plain language of the statute—that an animal may be declared dangerous either by the administrative process at SMC 9.25.035 or by a jury at a criminal trial.

For her argument that a charge of owning a dangerous animal must be dismissed where it is not preceded by an administrative declaration of dangerousness, Norman cites State v. Bash, 130 Wn.2d 594, 925 P.2d 978 (1996). In Bash, the statute provided that "'the owner of any dog that aggressively attacks and causes severe injury or death of any human, *whether*

4

*the dog has previously been declared potentially dangerous or dangerous*, shall be guilty'" of a felony. Bash, 130 Wn.2d at 600 (emphasis added), quoting former RCW 16.08.100(3) (1987). The court interpreted this statute to require a previous declaration of either dangerousness or potential dangerousness. Bash, 130 Wn.2d at 603. Norman cites to Chief Justice Durham's concurring opinion that dismissal was required because there was no allegation that a previous declaration of dangerousness or potential dangerousness had been made. Bash, 130 Wn.2d at 613. The statute in Bash is not the same as the ordinance at issue here. Prong A does not require a previous declaration that the animal was potentially dangerous or dangerous. For this reason, Bash does not support Norman's argument that she could not be charged with owning a dangerous animal absent a previous administrative declaration of dangerousness.

We conclude that the Seattle Municipal Code does not require the city to administratively declare an animal dangerous before charging the owner with owning a dangerous animal.

## DUE PROCESS

Norman was convicted after a jury trial in Seattle Municipal Court—"a criminal proceeding with maximum due process protection." Rabon v. City of Seattle, 107 Wn. App. 734, 744, 34 P.3d 821 (2001). At Norman's trial, the city had the burden of proof and the jury was properly instructed regarding this burden. Norman does not claim that any due process violations occurred during her trial.

Instead, Norman claims that it was a denial of due process for the city to charge her with owning a dangerous animal without first administratively declaring Duncan dangerous pursuant to SMC 9.25.035. A municipal ordinance is presumed to be constitutional, and the party challenging it has the burden of proving its unconstitutionality beyond a reasonable doubt. City of Seattle v. Montana, 129 Wn.2d 583, 589, 919 P.2d 1218 (1996).

Norman cites to an Ohio case for the proposition that a defendant's due process rights are violated when there is no administrative hearing before criminal charges are filed. State v. Cowan, 103 Ohio St. 3d 144, 2004-Ohio-4777, 814 N.Ed.2d 846. In Cowan, the deputy dog warden made a unilateral, unreviewable determination that the owner's dogs were vicious. The State then criminally prosecuted the dog owner for failing to confine a vicious dog. At the criminal trial, the State repeatedly told the jury the dog warden had already determined that the dogs were dangerous and it was not the jury's job to decide whether it was fair for the dog warden to make this determination. The Ohio Supreme Court found that the "vicious" element of the crime was removed from the jury's consideration and thus the dog owner was unconstitutionally deprived of her due process right. Cowan, 103 Ohio St. 3d at 148-49. In contrast, in this case, the jury did determine on its own that Duncan was dangerous, so the problem that existed in Cowan does not exist here.

Norman's case is more analogous to another Ohio case she cites, Youngstown v. Traylor, 123 Ohio St. 3d 132, 2009-Ohio-4184, 914 N.E.2d 1026. The Ohio Supreme Court held that a vicious dog ordinance did not violate the

6

dog owner's procedural due process rights where the dogs' viciousness was an element of the crime that the State had the burden of proving. Traylor, 123 Ohio St. 3d at 136. The dogs were alleged to be vicious in the criminal complaint, and the dog owner was given an opportunity for meaningful review in front of the trial court. Traylor, 123 Ohio St. 3d at 137. Similarly, Duncan's dangerousness was an element of the crime that the city had the burden of proving at trial. Duncan's dangerousness was alleged in the criminal complaint, and Norman had a criminal trial affording her maximum procedural due process. Norman has not met her burden to prove beyond a reasonable doubt that the ordinance under which she was convicted had to include a preliminary administrative determination of dangerousness in order to comport with due process.

EQUAL PROTECTION AND PRIVILEGES AND IMMUNITIES

If an animal is administratively declared dangerous in Seattle, the animal may be sent to a secure animal shelter, removed from the city, or euthanized. SMC 9.25.035(A). But if an animal owner is convicted of owning a dangerous animal, as Norman was, the animal shall be euthanized. SMC 9.25.083(C). The heart of Norman's complaint is that the city, on Duncan's first offense, proceeded directly to criminal charges which mandate death as a penalty rather than administratively declaring him dangerous and retaining the option to spare his life. Norman challenges the city for creating disparate penalties for the same conduct and for choosing to prosecute Norman under the harsher ordinance. Norman argues that the penalty disparity violates her rights both under the equal protection clause of the Fourteenth Amendment and under the privileges and

immunities clause of the Washington State Constitution. Again, a municipal ordinance is presumed to be constitutional, and the party challenging it has the burden of proving its unconstitutionality beyond a reasonable doubt. Montana, 129 Wn.2d at 589.

Norman refers to a violation of the equal protection clause in passing, but does not brief the issue. Indeed, she acknowledges that the case she would like to rely on for such a claim, State v. Zornes, 78 Wn.2d 9, 475 P.2d 109 (1970), is no longer good law. Zornes held that acts defining the same offense for the same conduct but prescribing different punishments violate an individual's right to equal protection under the Fourteenth Amendment. Zornes, 78 Wn.2d at 21, 24-25. But the equal protection analysis in Zornes was later overruled by the Supreme Court in United States v. Batchelder, 442 U.S. 114, 125, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979), where the Court held that the prosecutor's ability to choose to proceed under identical criminal statutes prescribing different penalties, standing alone, does not give rise to an equal protection violation. See City of Kennewick v. Fountain, 116 Wn.2d 189, 802 P.2d 1371 (1991) (recognizing that Batchelder overruled Zornes as to equal protection analysis under the Fourteenth Amendment). Norman cites no authority to support her equal protection argument. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Norman's Fourteenth Amendment equal protection claim fails for lack of authority.

8

To establish a violation of the privileges and immunities clause of the state constitution, the challenger must show that the law, or its application, confers a privilege to a class of citizens. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 812, 83 P.3d 419 (2004). The first step of the analysis is to determine whether the law in question involves a privilege or immunity; if not, the privileges and immunities clause is not implicated. Grant County, 150 Wn.2d at 812.

The term "privileges and immunities" is limited to "'those fundamental rights which belong to the citizens of the state by reason of such citizenship.'" Grant County, 150 Wn.2d at 812-13, quoting State v. Vance, 29 Wash. 435, 458, 70 P. 34 (1902). Included are the right to carry on business; the right to acquire property and protect it under the law; the right to usual remedies to collect debts and enforce other personal rights; and the right to be exempt, in property or persons, from taxes or burdens which citizens of other states are exempt from. Grant County, 150 Wn.2d at 813. The statutory authorization allowing landowners to petition for annexation is not included because it does not involve a fundamental attribute of an individual's state or national citizenship. Grant County, 150 Wn.2d at 812-13. A person's property interest in dogs is imperfect or qualified rather than absolute. Am. Dog Owners Ass'n v. City of Yakima, 113 Wn.2d 213, 777 P.2d 1046 (1989); Rabon, 107 Wn. App. at 743. That is, the State may use its police power to regulate and destroy dogs in order to protect human citizens. Rabon, 107 Wn. App. at 743. Because a person has no fundamental right as a citizen to own a dog, the Seattle ordinance in question

does not involve a privilege or an immunity. Norman's claim under the Washington Constitution privileges and immunities clause also fails.

OFFICER JACKSON'S TESTIMONY

At Norman's trial in January 2014, the city was confronted with a problem. None of the witnesses had seen Duncan attack Grant. Grant was unavailable as a witness because she had moved out of state and Norman did not testify. A dangerous animal is defined as one that inflicts severe injury or kills "when unprovoked." SMC 9.25.020(G)(1). To convict Norman of owning a dangerous animal, the city had to prove without an eyewitness that Duncan's bite was unprovoked. The city tried to solve this problem by having Officer Jackson testify about his investigation of the dog bite. Norman assigns two errors to the admission of Officer Jackson's testimony.

The first issue concerns the admission of Grant's out-of-court description of the incident in her interview with Officer Jackson. Norman raised a preliminary objection to the city's plan to have Officer Jackson testify about Grant's statement, arguing that it was inadmissible hearsay and violated the confrontation clause. The city countered that Grant's statement would not be offered for the truth of the matter asserted but rather to show how Norman reacted when Officer Jackson repeated it to her. Norman's reaction could then be admitted as an admission of a party opponent. The trial court agreed with the city and ruled that Officer Jackson would be allowed to testify as to what he told Norman that Grant told him.

At trial, the prosecutor asked Officer Jackson what he told Norman about his interview with Grant:

Q.      [Prosecutor:] What did you tell the defendant Ms. Grant had told you?
A.      [Officer Jackson:] Um, I told her that the—Ms. Grant said she came over to the house to borrow something, and that when she knocked on the door, um, the defendant opened up the door and that the dog came out, immediately charged past her and began lunging and snapping and then finally biting her.

The prosecutor then asked about Norman's response:

Q.      [Prosecutor]: . . . Officer Jackson, when you told the defendant what Ms. Grant had told you, how did she react?
A.      [Officer Jackson]: Um, the defendant acknowledged that incident occurred.  She said that Duncan had got—got past her when she opened up the door, um, and—and bit the—her neighbor.  She also said that the reason why she opened the door—normally she'll put the dog up, but because Duncan didn't show any type of aggressive behavior when . . . Ms. Grant knocked on the door, Duncan didn't show any type of aggressive behavior, so she thought it was okay, and she opened up the door and didn't—Duncan shot past her.

Norman contends that the admission of Officer Jackson's testimony about Grant's out-of-court statement violated the confrontation clause of the Sixth Amendment.  Our review is de novo.  State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009).  The confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford v. Washington, 541 U.S. 36, 59-60 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Norman confirmed the facts contained in Grant's statement: as Norman opened the door, Duncan got past her and bit Grant.  Norman's statement was admissible as a statement of a party opponent.  ER 801(d)(2).  With Norman's

statement having been ruled admissible, the city did not need all the details in Grant's statement. If the idea was to set the stage for Officer Jackson's testimony quoting Norman's reaction to Grant's account, the prosecutor could have simply asked Officer Jackson what Norman said about the incident in reaction to hearing him report Grant's account of it. Because the set-up for Norman's statement could have been done without having Officer Jackson repeat Grant's out-of-court statement, the city's explanation that Grant's statement was offered solely to show Norman's reaction is not entirely convincing. But even if Grant's statement to the officer was not properly admitted, the error was probably harmless, given that Grant's and Norman's statements were much the same.

This brings us to Norman's second evidentiary issue: that Officer Jackson was allowed to say that Duncan's bite was unprovoked. We agree with Norman that this statement was improper opinion testimony and the error was prejudicial.

Norman asked that Officer Jackson be instructed not to testify that Duncan's bite was unprovoked, arguing that it was an improper legal opinion. The trial court agreed and ruled that Officer Jackson could testify "why he did what he did" without drawing the legal conclusion that the bite was unprovoked. Nevertheless, Officer Jackson testified that he told Norman the bite was unprovoked:

> Q. [Prosecutor:] Can you please explain to the jury what you explained to the defendant that day.
> A. [Officer Jackson:] I explained that a unprovoked bite—well, first I started a provoked bite. A provoked bite—I explained the unprovoked bite first. I explained that the unprovoked bite is when a person, um, is walking down the street and your dog leaves the premises and bites the individual without any provocations. Um, and then I went into the provoked

12

> bite, the dog is provoked if the dog is teased, tantalized, um, protecting property or protecting the owner.
>
> Q. [Prosecutor:] And what did you tell the defendant about this bite?
>
> A. [Officer Jackson:] And I told the defendant that this bite is a unprovoked bite because—
>
> MS. BERNHEIM: Objection, your Honor. This was addressed earlier.
>
> THE COURT: Ask a different question.
>
> MS. LONGANECKER: Your Honor, may I have a side bar?
>
> THE COURT: Actually, I'm going to allow the—I'm going to allow the statement.
>
> MS. LONGANECKER: Thank you.
>
> THE COURT: You can ask it again.
>
> Q. [Prosecutor:] What did you tell the defendant about this bite?
>
> A. [Officer Jackson:] I told her this bite was an unprovoked bite.
>
> Q. [Prosecutor]: And how did she react when you told her that?
>
> A. [Officer Jackson] She said, after explaining it, she said she understood, and I told her that I was going to issue her a citation for that bite.

A trial court's ruling on the admissibility of opinion evidence is reviewed for abuse of discretion. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).

Generally, no witness may testify to an opinion regarding the guilt of the defendant, whether by direct statement or inference. State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Such testimony is unfairly prejudicial because it invades the exclusive province of the fact finder. Black, 109 Wn.2d at 348. In deciding whether statements are impermissible opinion testimony, we consider the entire circumstances of the case, including the following factors: the nature of the charges, the type of defense, the type of witness involved, the specific nature of the testimony, and the other evidence before the trier of fact. City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993), review denied, 123 Wn.2d 1011 (1994).

Norman's defense was that the city had not carried its burden of proving the bite was unprovoked. Provocation was the only disputed fact for the jury. The fact that Officer Jackson's opinion went to the core disputed issue made it more likely to constitute improper opinion testimony. See, e.g., State v. Montgomery, 163 Wn.2d 577, 594, 183 P.3d 267 (2008) (opinion testimony that went to defendant's intent, the core issue and only disputed element, was improper); State v. Farr-Lenzini, 93 Wn. App. 453, 462-63, 970 P.2d 313 (1999) (in prosecution for attempting to elude, officer's testimony that defendant was attempting to get away went to a core contested issue and was improper).

The specific nature of Officer Jackson's testimony was a legal conclusion. Under ER 704, a witness may testify as to matters of law but may not give legal conclusions. Hyatt v. Sellen Constr. Co., Inc., 40 Wn. App. 893, 899, 700 P.2d 1164 (1985). Improper legal conclusions include testimony that a particular law applies to the case or that the defendant's conduct violated a particular law. Hyatt, 40 Wn. App. at 899. For example, it was improper for a law enforcement officer to testify that he had been trained in the elements of reckless driving, that the defendant's actions fit within those elements, and that he issued the defendant a citation. State v. King, 167 Wn.2d 324, 331-32, 219 P.3d 642 (2009). In another case, the witness testified that the propane tanks in question were not approved by the Department of Transportation. State v. Olmedo, 112 Wn. App. 525, 532-33, 49 P.3d 960 (2002), review denied, 148 Wn.2d 1019 (2003). The testimony constituted an improper legal conclusion because it required applying

14

the law defining an approved propane tank to the facts of the defendant's case. Olmedo, 112 Wn. App. at 532.

Officer Jackson said he first explained to Norman how the law distinguishes a provoked bite from an unprovoked bite. He then applied the legal definitions to the facts of Duncan's bite and told her his conclusion that it was an unprovoked bite. He told Norman he was going to issue her a citation for the bite, a finding of guilt. He essentially stated the legal definition, applied it, and found Norman guilty. Under ER 704, King, and Olmedo, this was improper legal opinion testimony.

The city's other evidence on the issue of provocation was not particularly strong. Officer Jackson formed his opinion that the bite was unprovoked based on his post-bite interviews, not on a personal observation of the incident. By contrast, in Heatley, the officer's opinion that the driver was intoxicated was based on detailed testimony about his personal observations of the driver's physical condition and performance on the field sobriety tests. The jury was therefore in a position to independently assess the opinion in light of the foundation evidence. Heatley, 70 Wn. App. at 581-82.

When a law enforcement officer gives opinion testimony, the jury is especially likely to be influenced by that testimony. State v. Carlin, 40 Wn. App. 698, 703, 700 P.2d 323 (1985). A law enforcement officer's live testimony during trial will often carry an aura of special reliability and trustworthiness. Demery, 144 Wn.2d at 763. Because Officer Jackson is a law enforcement officer, his improper opinion testimony was especially prejudicial. In sum, all the Heatley

factors indicate that Officer Jackson's opinion testimony improperly usurped the role of the jury.

The city argues that Officer Jackson's testimony was a fair opinion as to the significance of the circumstances surrounding the dog bite and that it was then up to the jury to decide whether Duncan was dangerous. The city cites State v. Nelson, 152 Wn. App. 755, 763-64, 219 P.3d 100 (2009), review denied, 168 Wn.2d 1028 (2010). However, Nelson involved an expert witness, an investigator who specialized in infiltrating animal fighting rings. He testified about evidence found at the property of defendants charged with animal fighting and concluded that that it was a dog fighting operation and that the dogs were possessed with the intent that they be engaged in dogfighting. Nelson, 152 Wn. App. at 763-64. The appellate court found that the trial court did not abuse its discretion in allowing this testimony because it was a classic expert opinion, pulling disparate pieces of evidence into a coherent picture for jurors who would not be familiar with the world of dogfighting. Nelson, 152 Wn. App. at 765-69. The jury could accept or reject the expert's characterization of the evidence. Nelson, 152 Wn. App. at 765-69. In contrast, here Officer Jackson was not attempting to explain the significance of evidence but rather was allowed to repeat his personal legal conclusion that the bite was unprovoked, when that element was strictly a question for the jury to decide. For this reason, Nelson does not demonstrate that Officer Jackson's opinion testimony was proper.

We conclude that the trial court abused its discretion in allowing Officer Jackson's improper opinion testimony and that the error was not harmless in light of the scarcity of other evidence that the bite was unprovoked.

Reversed.

_Becker, J._

WE CONCUR:

_Leach, J._

_Cox, J._